# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| **DALE W. McKENZIE,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **vs.** | ) **Case no. 4:10cv1494 AGF/TCM** |
| | ) |
| **TROY STEELE and CHRIS KOSTER,** | ) |
| | ) |
| **Respondents.** | ) |

## ORDER AND REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Dale W. McKenzie (Petitioner), a Missouri prisoner, petitions the United States

District Court for the Eastern District of Missouri for federal habeas corpus relief from

a 2006 conviction after a jury trial. See 28 U.S.C. § 2254. Petitioner submitted an

original petition [Doc. 1] and an amended petition [Doc. 20]. Respondents filed a

response to the original and amended petitions [Docs. 14 and 27], and Petitioner filed

replies [Docs. 16 and 30].

This matter is before the undersigned United States Magistrate Judge for a review

and recommendation regarding dispositive matters and for rulings on non-dispositive

matters. See 28 U.S.C. § 636(b); Rule 8(b), Rules Governing Section 2254 Cases in the

United States District Courts; Case Management Order, filed Aug. 19, 2010 [Doc. 8].

Finding that the amended petition, which presents three grounds for relief, was filed

after expiration of the filing deadline and that one claim in the amended petition does

not relate back to the claims in the timely filed original petition, the undersigned

recommends that the amended petition be dismissed without further proceedings, and denies as moot all pending requests related to that petition. With respect to the eleven grounds for relief presented in the original petition, the undersigned concludes that two of those grounds are not cognizable in a federal habeas proceeding, that three of the grounds are procedurally defaulted, and that the remaining six grounds lack merit. Therefore, the undersigned further recommends that the original petition be denied without additional proceedings.

Before discussing the facts and law relevant to this proceeding, the Court will clarify its consideration of materials submitted by the parties. With their response to Petitioner's original petition, Respondents submitted documents from the underlying state court proceedings.[1] (See Resp'ts Exs. [Docs. 15 and 39].) With his original petition, Petitioner provided the following materials:

-- a two-page list of post-conviction claims [Doc. 1-2 at 1-2] that is identical to a portion of Petitioner's amended post-conviction motion, which was submitted by Respondents (see Pet'r Am. Mot., Legal File, Resp'ts Ex. F, at 90-91);

-- a one-page copy of the Judgment of the Superior Court of Cherokee County, Georgia in **State v. McKenzie**, Case No. 98CR0091, ("the Georgia conviction") revealing in relevant part that in 1998 Petitioner pleaded guilty to a reduced charge of sodomy, on Count II, rather than the aggravated sodomy offense originally charged in

_____

[1] Respondents also filed copies of materials from Petitioner's recent unsuccessful Georgia state habeas challenge to Petitioner's prior conviction in Georgia. See Resp'ts Ex. J and K [Doc. 27]; Resp'ts Ex. A [Doc. 33].

Count II; and that the other counts, Counts I (rape) and III (possession of a firearm by a convicted felon), were resolved by "nolle prosequi" [Doc. 1-2 at 3];

-- an eleven-page copy of the Georgia Supreme Court's decision in **Powell v. State**, available at 510 S.E.2d 18 (Ga. 1998), including a number of handwritten notations [Doc. 1-2 at 4-14];

-- a one-page, undated affirmation by Petitioner's son, Jeremy Hendrickson (Hendrickson), who owned the home where the incident at issue here occurred, stating, among other things, that Petitioner had his permission, and a key, to enter the house on May 12, 2005, the date of the incident; that Petitioner had been staying at that home for about two weeks before that date; and that Carmen R. Dashiell ("Victim"), who was Hendrickson's girlfriend at the time of the incident, was aware that Petitioner had Hendrickson's permission to stay at the residence [Doc. 1-2 at 15];

-- a nineteen-page copy of the Missouri Court of Appeals' decision in Petitioner's direct appeal [Doc. 1-2 at 16-34], which is identical to the copy provided by Respondents as Respondents' Ex. E;

-- a twenty-one page copy of the motion court's judgment [Doc. 1-2 at 35-55], which is identical to the copy provided by Respondents (see pages 151-172 of the Legal File that is Respondents' Ex. F); and

-- a fourteen-page copy of the Missouri Court of Appeals' decision in Petitioner's post-conviction appeal [Doc. 1-2 at 56-69], which is identical to the copy provided by Respondents as Respondents' Ex. I.

Neither party has objected to the other party's exhibits or challenged the Court's consideration of those exhibits in this proceeding. As necessary to the resolution of Petitioner's habeas proceeding, the Court may consider some of these exhibits but will not consider others. The Court may consider Respondents' exhibits because they are copies of materials from Petitioner's state court proceedings that are related to this habeas proceeding. With respect to the exhibits consisting of such state court materials that were submitted by both Petitioner and Respondents, the Court will, for convenience, refer to the exhibits submitted by Respondents, rather than referring to both those exhibits and the same exhibits submitted by Petitioner. With respect to the other materials Petitioner provided with his original petition, the Court will not consider the one-page document pertaining to the Georgia conviction as it is not clear that the document is identical to the version presented to the state trial court for determining whether Petitioner was a prior and persistent offender in the underlying trial proceedings. Additionally, the Court will not consider Hendrickson's undated, one-page affirmation as it is not clear that the document was a part of the state court proceedings related to this federal habeas proceeding. While the Court will read and consider the Georgia Supreme Court's opinion in **Powell**, supra, the Court will not use the annotated version of that opinion submitted by Petitioner.

### Background

Petitioner was charged, as a persistent offender, with one count of first-degree burglary in violation of Mo. Rev. Stat. § 569.160 and one count of first-degree assault

in violation of Mo. Rev. Stat. § 565.050, for his conduct toward Victim on May 12, 2005, at Hendrickson's home; and one count of first-degree assault in violation of Mo. Rev. Stat. 565.050 for his conduct toward a neighbor, Gary R. Hagen (Hagen), during the May 12, 2005 incident involving Victim. (Third Am. Info., filed June 26, 2006, Legal File, Resp'ts Ex. B, at 18-20.)

In June 2006, the trial court found Petitioner was a prior and persistent offender based upon unopposed evidence that Petitioner had been found guilty of or had pleaded guilty to two earlier offenses, one from the State of Georgia and one from the State of California. (Findings of Fact by the Judge Pursuant to Mo. Rev. Stat. § 558.021, Legal File, Resp'ts Ex. B, at 17; Trial Tr., Resp'ts Ex. A, at 1-5.) With respect to the Georgia conviction, the trial court found that "[o]n or about August 7, 1998, [Petitioner] was found guilty of the felony of Sodomy, in Cause Number 98CR-91, in the Circuit Court of the County of Cherokee, State of Georgia." (Findings of Fact by the Judge Pursuant to Mo. Rev. Stat. § 558.021, Legal File, Resp'ts Ex. B, at 17; Trial Tr., Resp'ts Ex. A, at 2-3.)

At the jury trial in July 2006, the State introduced various exhibits pertaining to the May 2005 incident, including a copy of the recording of several 911 calls made from Hendrickson's home between May 11 and May 12, 2005; Victim's and Hagen's medical records; Victim's telephone records; the robe Victim wore during the incident; and photographs of the location where the incident occurred. (See, e.g., listing at index of exhibits in Trial Tr., Resp'ts Ex. A.) Additionally, the State presented the testimony of:

-- Tom McCormack, the 911 coordinator for St. Louis County, who was in charge of maintaining 911 records and provided a tape recording of four 911 calls received from Hendrickson's home between 11:53 on May 11, 2005 and 12:34 on May 12, 2005 (Trial Tr., Resp'ts Ex. A, at 271-82);

-- Victim (id. at 282-466);

-- Hagen (id. at 467-602);

-- Joseph Craig, an officer with the St. Louis County Police Department, who responded to a call about a prowler at Hendrickson's home just before midnight on May 11, 2005, and spoke with Victim at that time; and then returned to the home in response to another call at that location around 12:30 a.m. on May 12, 2005, when he spoke with Victim and Hagen, and took Petitioner to the police station (id. at 611-64);

-- Marcus Johnson, a life-long friend of Hendrickson's who spoke by telephone with Victim on several occasions early on May 12, 2005, suggested she stay on the telephone with him, heard some conversation between Petitioner and Victim, heard Victim screaming, and then called the police (id. 664-704, 708-31);

-- Joshua Chadd, a life-long friend of Hendrickson's who, early on May 12, 2005, had telephone conversations with Johnson, went to Hendrickson's home, accompanied Victim to the hospital, and saw Hagen at the hospital (id. at 732-42);

-- Dr. Lawrence R. Brown, who attended Victim at the hospital (id. at 743-84); and

-- Dr. Mary Case, the Chief Medical Examiner in St. Louis, St. Charles, Jefferson, and Franklin counties (<u>id.</u> at 788-838). At the conclusion of the State's evidence, the trial court overruled Petitioner's motion for judgment of acquittal. (<u>Id.</u> at 839-41.)

Petitioner did not testify (<u>see</u> <u>id.</u> at 892-93), and presented the testimony of Tamara F. Hammon, Petitioner's sister (<u>id.</u> at 842-52); Lorraine Jordan, Petitioner's brother's fiancé (<u>id.</u> at 853- 65); Krissie Jeffries, Hendrickson's sister (<u>id.</u> at 865-72); and Michael J. McKenzie, Petitioner's brother (<u>id.</u> at 872-82). When Hendrickson, who was subpoenaed by Petitioner, did not appear to testify, Petitioner requested leave to introduce into evidence a transcript of Hendrickson's July 5, 2005 statement to the police or a recess to send a law enforcement officer to get Hendrickson. (<u>Id.</u> at 888.) The trial court sustained the State's objection to these requests, and allowed Petitioner to submit a copy of Hendrickson's July 5, 2005 statement as an offer of proof. (<u>See</u> <u>id.</u> at 889-92.) Later, just before the matter was presented to the jury, Petitioner requested a mistrial "due to not being allowed to go get" Hendrickson. (<u>Id.</u> at 901.)

With respect to the assault involving Victim, the trial court gave the jury verdict-directing instructions for first-degree assault (Instr. No. 8, Legal File, Resp'ts Ex. B, at 77-78) and third-degree assault (Instr. No. 9, Legal File, Resp'ts Ex. B, at 79-80). The record reveals a verdict director for second-degree assault that the trial court reportedly "refused," but Petitioner's counsel stated on the record that, after "thorough discussion,"

it was not submitted.  (Instr. No. A, Supplemental Legal File; Trial Tr., Resp'ts Ex. A, at 899-900.)

The jury found Petitioner guilty of first-degree burglary and first-degree assault for his conduct toward Victim; and guilty of third-degree assault, in violation of Mo. Rev. Stat. § 565.070, for his conduct toward Hagen.  (Id. at 953, 956-58; Verdict, Legal File, Resp'ts Ex. B, at 88, 89, and 90.)

In September 2006 Petitioner filed a motion to withdraw his status as a prior and persistent offender ("motion to withdraw").  (Pet'r Mot. Withdraw [Pet'r's] Status as a Prior and Persist[e]nt Offender, Legal File, Resp'ts Ex. B, at 96-97.)  That motion to withdraw stated:

> Comes now [Petitioner] through counsel and requests that the Court withdraw [Petitioner']s status as a prior and persistent offender for the following reasons:
>
> 1. [Petitioner] recently heard that the sodomy law in the State of Georgia was overturned in Georgia by the Georgia Supreme Court.
>
> 2.  After [Petitioner's] counsel researched the issue, it was found that the sodomy law was in fact overturned by the Georgia Supreme Court in Powell v. State on 11-23-1998.
>
> 3.  [Petitioner] plead[ed] guilty to sodomy on 8-11-98 in the State of Georgia.
>
> 4.  [Petitioner] intends [to] challeng[e] his conviction in Georgia and[,] if overturned[,] he would not be a prior and persistent [offender].
>
> 5.  Therefore, for the above reasons, [Petitioner's] counsel believes that [Petitioner]'s previous conviction in Georgia for sodomy should not prove him up as a prior and persistent offender and [Petitioner] should be sentenced under the B felony range of punishment.

(Id.)   The trial court denied the motion to withdraw (id. at 97), as well as Petitioner's oral request for a continuance of the sentencing to look into the Georgia conviction (Trial Tr., Resp'ts Ex. A, at 960-64, 965).   The trial court then sentenced Petitioner, as a prior and persistent offender, to consecutive terms of imprisonment of thirty years, life, and one year, respectively, for the first-degree burglary, first-degree assault, and third-degree assault offenses, a total term of imprisonment of life plus thirty-one years.  (Id. at 974-75; Sentence and J., dated Sept. 22, 2006, Legal File, Resp'ts Ex. B, at 99-101.)

Upon obtaining leave to file a late appeal, see Legal File, Resp'ts Ex. B, at 103, Petitioner raised four points on direct appeal.  (Pet'r Br., Resp'ts Ex. C.)  In point one, Petitioner argued the trial court violated his right to due process with respect to the first-degree burglary offense because there was insufficient evidence that Petitioner entered the home unlawfully for the purpose of assaulting Victim.  (Id. at 13, 17.)  For point two, Petitioner argued his rights to a fair trial and to compulsory process were violated when the trial court denied his requests for a continuance and to obtain a writ of attachment to compel Hendrickson's attendance at trial because Hendrickson would have testified that he gave Petitioner permission to be at Hendrickson's home the evening of the incident. (Id. at 14, 22.)  In Petitioner's third point, Petitioner urged that the trial court's refusal to give a second-degree assault instruction with respect to the assault offense involving Victim violated his right to a fair trial, because "the jury could have found [Petitioner] did not intend to kill or cause serious injury to [Victim] but used his hands,

dangerous instruments, to cause [her] physical injury." (Id. at 15, 26.) For his fourth and final point, Petitioner contended that the trial court's failure to grant Petitioner's motion for continuance of the sentencing violated his right to fundamental fairness in that the trial court sentenced Petitioner to an extended term of imprisonment based upon a conviction under a Georgia state statute that was subsequently declared unconstitutional, which decision rendered Petitioner's earlier Georgia conviction void. (Id. at 16, 30.)

On February 5, 2008, the Missouri Court of Appeals for the Eastern District of Missouri affirmed the trial court's judgment in a summary order, supplemented by a memorandum, which was sent only to the parties, setting forth the reasons for the decision. (Per Curiam Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated Feb. 5, 2008, Resp'ts Ex. E.) In affirming, the state appellate court found the facts as follows.

> Viewed in the light most favorable to the verdict, the following evidence was adduced at trial. Victim lived at 544 Summit Road, Fenton, Missouri, with her boyfriend, . . . Hendrickson . . . . [Petitioner] was Hendrickson's father. [Petitioner] did not live with Victim and Hendrickson. Victim never spent any time alone with [Petitioner]. [Petitioner] would occasionally stay with Hendrickson but he did not have a key to the house.
>
> On the day of the incident, Victim was home alone because Hendrickson had left around noon to go to a bar. Hendrickson was angry when he left because he and Victim had had a fight. Hendrickson took Victim's car because his car would not start. Around 3:00 p.m., Victim was taking the trash out when a car pulled up. A woman was driving the car and [Petitioner] was a passenger. The woman said [Petitioner] was "really drunk" and [she] did not know where else to [take Petitioner]. The

woman asked if [Petitioner] could stay at Victim's house. Victim agreed and helped [Petitioner] out of the car and into the house. The woman then left.

[Petitioner] appeared very drunk. He had slurred speech, was unable to walk, and "reeked" of alcohol. [Petitioner] asked for his son, and did not believe Victim when she told him [his son] was not there. [Petitioner] said, "I'm so f----- up" and then said he had to urinate. Victim led [Petitioner] to the bathroom. After [Petitioner] came out of the bathroom, Victim saw he had urinated all over the bathroom floor. Victim cleaned up the bathroom floor with a towel and told [Petitioner] he needed to go "sleep it off."

Eventually, Victim went out on the porch to smoke a cigarette. [Petitioner] followed her outside and said he was "f----- up" and needed help. Again, Victim told [Petitioner] he needed to "sleep it off." [Petitioner] fell on a chair on the patio and passed out. Victim went back in the house and locked the door. [Petitioner] remained passed out for nearly two hours.

Meanwhile, Hendrickson's sister and her boyfriend came by to return Victim's car. Victim suggested they take [Petitioner] with them, but they declined. Victim asked if they knew where Hendrickson was, so that he could deal with [Petitioner]. They said Hendrickson had been at a bar but had left. Hendrickson's sister and her boyfriend then left, but told Victim to call them if [Petitioner] gave her any trouble.

Victim then tried calling and eventually reached Hendrickson on his cell phone. Victim told Hendrickson that [Petitioner] was drunk and passed out outside. Hendrickson told Victim to leave [Petitioner] outside and not to let him in. Victim went back inside and locked the doors.

A few hours later, after [Petitioner] awoke, he started pounding on the doors, asking to be let in and yelling for Hendrickson. [Petitioner] pounded on the windows and tried to pull the screens off. [Petitioner] urinated around the house and passed out on the hood of Victim's car. Victim tried to call and text-message Hendrickson, but could not reach him. [Petitioner] woke up and began talking to a man who had come to mow the lawn. At this point, it had grown dark and [Petitioner] left with the lawn man.

At approximately 9:00 p.m., Victim got dressed and went to find Hendrickson. When she reached him on the phone, he said he was at a bar near the South County Mall, but when Victim arrived, he was not there. Eventually, Victim returned home, got into her pajamas, and went to bed.

Shortly after Victim got into bed, she heard a banging on the door. It was [Petitioner], saying, "Let me in. . . . Let me in." [Petitioner] tried to get into Victim's bedroom window by popping the screen off the window. At around 11:40 p.m. Victim again tried calling Hendrickson but, instead, [Petitioner] answered the phone. Victim asked [Petitioner] why he had Hendrickson's phone. [Petitioner] said he did not know and asked Victim why she would not let him in the house. Victim told him that he was drunk, that Hendrickson was not there, and that she did not want [Petitioner] there without Hendrickson. [Petitioner] screamed, "Bitch, let me in." Victim hung up.

At around 11:53 p.m., . . . Hagen . . . , a neighbor, called 911 and reported that a prowler was trying to break into Victim's house. At this point, Victim was on the phone with one of Hendrickson's friends trying to locate Hendrickson. Victim peeked out the window and saw five policemen with flashlights in her backyard. Victim went to the door and spoke with the police, who reported that they had received a call that someone was trying to get in. The police asked if the potential intruder had left, and Victim said yes. Victim did not tell the police that [Petitioner] was trying to get into the house because she did not want Hendrickson to get mad at her for getting [Petitioner] in trouble, and because [Petitioner] had said many times he would "go down in a blaze of glory" before getting arrested. Victim assumed that [Petitioner] was hiding in the bushes at that point, as he had banged on the doors and windows just minutes before the police arrived. The police told Victim that they would look around, and that if he came back, to give them a call. The police then looked around and left.

Shortly after midnight, Hagen was again awakened by noises. He looked outside and saw [Petitioner], who appeared "pretty angry," pacing quickly between the front door and the back door of the house. [Petitioner] then approached Victim's car, pushed on the driver's side attempting unsuccessfully to gain entry. Eventually, Hagen lost sight of [Petitioner] and went back to bed.

At this point, Victim, too, had gone back to bed, but shortly after, heard a window crash in. All the lights were off. Victim grabbed her cell phone and tried to get under her bed, but could only get under halfway. Victim called 911. Victim could hear [Petitioner] walking through the house. When the dispatcher asked her what her emergency was, Victim could not say anything because, at that point, [Petitioner] was on her bed. Victim hung up on the 911 dispatcher.

[Petitioner] looked under the bed and saw Victim. [Petitioner] seemed very calm and said, "Girl, what are you doing?" Victim said, "You scared me. You broke my window." [Petitioner] grabbed Victim's cell phone and looked on the screen, which said emergency call. [Petitioner] asked her if she called the police, but Victim denied so doing.

[Petitioner] walked into the kitchen and Victim followed him asking which window he broke. [Petitioner] responded it was the one in the dining room. Victim could see broken glass in the dining room. [Petitioner] said he wanted a place "to crash," but Victim told him that she did not want him there, he was too drunk, and he could not stay there without his son. At this point, [Petitioner] appeared to have sobered up.

Victim asked [Petitioner] where Hendrickson was, and [Petitioner] said he did not know. [Petitioner] said he did not know why he had Hendrickson's phone. Victim then took Hendrickson's phone from [Petitioner] and tried to call Hendrickson's friends. [Petitioner] asked Victim what she was doing, and she said that she was trying to find Hendrickson. [Petitioner] asked if she was calling the police. [Petitioner] asked if she was scared, and Victim said no. [Petitioner] asked her why she was shaking. [Petitioner] then said in a "normal" tone of voice, "I'll tell you what, . . . I'll give you something to be scared about." [Petitioner] then walked over to Victim with a "blank stare," put his hands around her neck and began strangling her. Victim was able to scream loudly, "No, Dale, no."

Victim eventually ended up on the kitchen floor, with [Petitioner] straddling and choking her. [Petitioner] told Victim, in a calm voice, to relax, not to fight, and that it would only take a minute. Victim fought back, kicking, scratching his face, biting his chest, and grabbing his scrotum but [Petitioner] continued to strangle Victim telling her to relax, not to fight back, and that it would be over soon. Eventually, Victim stopped fighting and [Petitioner] tried to turn her neck. Victim was afraid

- 13 -

he was trying to break her neck, so she started fighting again. [Petitioner] again told her to relax and to stop fighting. Victim finally stopped fighting because she was exhausted.

During the incident, Hagen heard Victim scream and again called 911 reporting that the man had gotten into Victim's home. Hagen got dressed and went over to Victim's house. Hagen broke through the locked door and saw Victim motionless on the kitchen floor with [Petitioner] straddling her and with his hands around her throat. [Petitioner] calmly asked Hagen what he was doing there, and then told him he needed to leave. Hagen asked, "[W]hat are you doing? What is wrong with you?" [Petitioner] slowly released Victim's neck and got up. [Petitioner] tried to get past Hagen and go to the back door, but Hagen blocked him. After an ensuing physical altercation, [Petitioner] escaped outside to the front deck where the police finally placed him under arrest.

When the police arrived, they found Victim outside, draped across a car in the driveway. Victim seemed unable to stand and was visibly shaken and distraught. Victim was gasping and suffering from shortness of breath. Victim told the police that the man inside the house tried to kill her and that he was dangerous. There was blood on the front door from where [Petitioner] had been bleeding from the hand. There was also blood on the shoulder and around the neck of Victim's robe, but Victim had not been bleeding. The dining room window had a big hole in the middle of it.

(Mem. Supplementing Order Affirming J. Pursuant to Missouri Supreme Court Rule 30.25(b), dated Feb. 5, 2008, Resp'ts Ex. E, at 2-7 (seventy-second alteration in original).)

In denying Petitioner's first point, which challenged the sufficiency of the evidence for the first-degree burglary offense, the Missouri Court of Appeals stated,

[Petitioner] contends he formed the intent to assault Victim only after he entered the home, therefore, the State did not prove a necessary element of the offense. We disagree.

\*    \*    \*

Under [Mo. Rev. Stat. §] 569.160, "a person commits the crime of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein." Section 569.160. Thus, the State had the burden of proving, beyond a reasonable doubt, that [Petitioner] not only unlawfully entered Victim's house but that he entered or remained in Victim's house for the purpose of committing assault therein. The only question, then, is whether the evidence supported an inference that [Petitioner] intended to commit assault when he broke into or remained in Victim's house.

From the record, a jury could reasonably infer [Petitioner] intended to assault Victim when he broke into the house. He had been trying to gain entry into the house since late afternoon and tried to get into Victim's bedroom. When Victim told him on the phone she would not allow him in, he became angry and screamed, "Bitch, let me in." [Petitioner] also appeared angry after the police had arrived the first time, around midnight. He was pushing against Victim's car and later repeatedly accused Victim of calling the police. When he broke into the house, [Petitioner] looked for Victim, "patting around" on the bed for her in the dark and then turning on the light and looking under the bed until he found her. [Petitioner] remained calm, asking Victim if she was going to call the police, whether she was afraid, why she was shaking, and then, before the assault, calmly telling Victim he would give her something to be afraid of.

[Petitioner] contends he was calm when he broke into the house and that he remained calm throughout. [Petitioner] asserts his actions suddenly changed when he was in the kitchen with Victim. We are not persuaded by [Petitioner]'s argument. Here, the evidence shows [Petitioner] made a deliberate and prolonged effort to get into Victim's house in order to find her. While [Petitioner] was strangling Victim, he was calmly telling her to relax, not to fight, and that it would be over soon. Contrary to [Petitioner]'s assertions, the fact he was calm throughout the incident demonstrated his intent to control the situation and Victim. Finally, there is nothing in the record to suggest something occurred, while [Petitioner] was in the house, to trigger the attack.

The totality of the evidence shows [Petitioner] was angry with Victim before he entered the house and that he had an animus toward her while he remained in the house. The totality of the evidence also shows

[Petitioner] was trying to find Victim when he entered the house, and that [Petitioner]'s questioning Victim about whether she was trying to call the police and whether she was scared was only a prelude to a calculated and deliberate attack.

The trial court did not err in overruling [Petitioner]'s motion for judgment of acquittal and in entering a conviction and sentence on the charge of first-degree burglary. There was sufficient evidence from which the jury could determine [Petitioner] intended to assault Victim when he unlawfully broke into or remained in the house. Point I is denied.

(Mem. Supplementing Order Affirming J. Pursuant to Missouri Supreme Court Rule 30.25(b), dated Feb. 5, 2008, Resp'ts Ex. E, at 8-10.)

In rejecting Petitioner's second point, in which he challenged the denial of his request for a continuance or for a writ of attachment to compel Hendrickson's attendance at trial, the state appellate court found as follows.

Section 491.150 provides: "A person summoned as a witness in any cause pending in any court of record, and failing to attend, may be compelled, by writ of attachment against his body, to appear." The use of the word "may" indicates the legislature intended to make relief under the statute discretionary with the trial court. State v. Wilkins, 872 S.W.2d 142, 147 (Mo. [Ct.] App. . . . 1994) (quoting J. A. A. v. A. D. A., 581 S.W.2d 889, 895 (Mo. [Ct.] App. . . . 1979)). Our review, therefore, is for an abuse of discretion. Id.

Similarly, the decision to grant or deny a continuance is discretionary with the trial court. State v. Artis, 215 S.W.3d 327, 336 (Mo. [Ct.] App. . . . 2007). "When a continuance request is based upon the absence of a witness, [Mo. S. Ct.] Rule 24.10 requires the application show the materiality of the potential testimony, the particular facts the witness will prove, due diligence on the part of the defendant to obtain the testimony, and reasonable grounds to believe the attendance or testimony of the witness will be procured within a reasonable time." Id. (quoting State v. Patton, 84 S.W.3d 554, 556 (Mo. [Ct.] App. . . . 2002)). On appeal, we will not reverse a trial court's refusal to grant a continuance for

a missing witness unless the witness's testimony would likely result in a different outcome.  Id.

[Petitioner] has failed to preserve this issue for review because he did not make a timely request for a continuance or a writ of body attachment, waiting until after he had rested his case; therefore, discretion rests with this court whether to review [Petitioner]'s claim for "plain error" under [Mo. Sup. Ct.] Rule 30.20.  See State v. Patrick, 757 S.W.2d 654, 656 (Mo. [Ct.] App. . . . 1988) (no error in the trial court's denial of a request for a writ of attachment for defense witness where request was not made until close of defendant's case and where there was no indication of materiality or necessity of witness testimony).

Plain error review is used sparingly.  State v. Boydston, 198 S.W.3d 671, 675 (Mo. [Ct.] App. . . . 2006).  Under Rule 30.20, we first must determine whether the claim for review facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted.  Id.  If we find facially substantial grounds exist, we then determine whether manifest injustice or a miscarriage of justice has occurred.  Id.  Here, we decline to review [Petitioner]'s claims for plain error.

As noted above, when a continuance request is based upon the absence of a witness, Rule 24.10 requires the application show, among other things, reasonable grounds to believe the attendance or testimony of the witness will be procured within a reasonable time.  Artis, 215 S.W.3d at 336.  [Petitioner] failed to show this.  While Hendrickson had been in court the day prior to the continuance request, no one had any idea where Hendrickson was the day of the request, as "endless efforts" by the defense and family members to reach him had failed.  Moreover, [Petitioner] made no showing that law enforcement would be able to find Hendrickson in a timely manner.

More importantly, [Petitioner] failed to demonstrate that Hendrickson's testimony would have provided a defense to the burglary charge.  Even assuming, as [Petitioner] claims, Hendrickson had given him permission to stay at this house, any alleged permission was revoked when Victim refused to let [Petitioner] in.

The trial court did not err, plainly or otherwise, in failing to grant a continuance or a writ of body attachment, after the defense rested, to

obtain Hendrickson's testimony. [Petitioner] failed to show Hendrickson's attendance could be procured within a reasonable time. In addition, [Petitioner] failed to demonstrate Hendrickson's testimony was material to his defense. Point II is denied.

(Mem. Supplementing Order Affirming J. Pursuant to Missouri Supreme Court Rule 30.25(b), dated Feb. 5, 2008, Resp'ts Ex. E, at 10-12.)

In denying Petitioner's third point, challenging the trial court's refusal to give a second-degree assault verdict director with respect to the assault involving Victim, the Missouri Court of Appeals found:

> [Petitioner] contends there was a basis to acquit him of first-degree assault and convict him of second-degree assault because the evidence raised a question as to whether [Petitioner] intended to kill or seriously injure Victim. We disagree.
>
> At the close of the instruction conference, [Petitioner's] counsel made the following statement concerning the proffered instructions, conceding that the disputed second-degree assault instruction was not supported by the evidence and that [Petitioner's] counsel did not submit the instruction:
>
> > [[Petitioner's] counsel]: Your Honor, I think for clarification of the record, we did, in fact, have an off the record discussion in chambers in regards to submitting a lesser included offense on . . . in regards to Assault in the Second Degree. And after thorough discussion of that issue, and looking at the elements of Assault Second, I think it was determined by us all that there was no weapon used, or anything that could be readily capable of lethal use in regards to a weapon. We had a thorough discussion in regards to . . . possibly the hands. And it was decided that that would not fit under Assault Second. So, therefore, Assault Second was not submitted.
>
> Here, despite [Petitioner's] counsel's express waiver of the instructional issue, this does not foreclose plain error review, as the trial court has a

duty to instruct the jury on the correct law.  See State v. Wurtzberger, 40 S.W.3d 893 (Mo. banc 2001).  Instructional error seldom rises to the level of plain error.  State v. Cooper, 215 S.W.3d 123, 125 (Mo. banc 2007). For instructional error to rise to the level of plain error, the defendant must show more than mere prejudice; he must establish the trial court has so misdirected or failed to instruct the jury that it is apparent the instructional error affected the jury's verdict.  Id.

A defendant is entitled to an instruction on a lesser included offense only if there is an evidentiary basis for both acquittal of the greater offense and conviction of the lesser offense.  State v. Pond, 131 S.W.3d 792, 793 (Mo. banc 2004).  "In order for there to be a basis for an acquittal of the greater offense, there must be some evidence that an essential element of the greater offense is lacking and the element that is lacking must be the basis for acquittal of the greater offense and the conviction of the lesser."  Id. at 794 (quoting State v. Barnard, 972 S.W.2d 462, 466 (Mo. [Ct.] App. . . . 1998)).

Here, the instruction [Petitioner] claims he was entitled to reads as follows:

If you do not find [Petitioner] guilty of assault in the first degree as submitted in Instruction No. 9 [sic - 8], you must consider whether he is guilty of assault in the second degree under this instruction.

As to Count 2, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about Thursday, May 12, 2005 at approximately 12:31 a.m., in the County of St. Louis, State of Missouri, [Petitioner] knowingly caused physical injury to [Victim] by means of a dangerous instrument by wrapping his hands around her throat and choking her, then you will find [Petitioner] guilty under Count 2 of assault in the second degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [Petitioner] not guilty of that offense.

As used in this instruction, the term "dangerous instrument" means any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury.

"Serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

The trial court did not plainly err in declining to give this instruction because there was no evidence [Petitioner] used a dangerous instrument in choking Victim with his hands. See Seiter v. State, 719 S.W.2d 141, 143-144 (Mo. [Ct.] App. . . . 1986) (declined to classify hands used to choke as dangerous instruments or deadly weapons).

Finally, [Petitioner] cannot show manifest injustice or miscarriage of justice because he received an instruction on the lesser-included offense of third-degree assault, but the jury convicted [Petitioner] of the greater offense, first-degree assault. Where the jury is given the option to acquit on the greater offense and convict on the lesser-included offense and still convicts on the greater offense, there is no reasonable basis to believe that the jury would have acquitted on the charged offense had other lesser-included offenses been submitted. State v. Barnett, 980 S.W.2d 297, 305-06 (Mo. banc 1998). The submission of a lesser-included offense is sufficient to test the jury's belief that the defendant met all of the elements of the charged offense. Id.

The trial court did not err, plainly or otherwise, in refusing to give [Petitioner]'s instruction on second-degree assault. The trial court correctly found that hands did not meet the statutory definition of "dangerous instrument." Furthermore, [Petitioner] was not prejudiced because a lesser-included offense was submitted to the jury and [Petitioner] was still convicted of the greater offense. Point III is denied.

(Mem. Supplementing Order Affirming J. Pursuant to Missouri Supreme Court Rule

30.25(b), dated Feb. 5, 2008, Resp'ts Ex. E, at 12-15 (footnote omitted); see also Instr.

No. A, Supp. Legal File.)

In denying Petitioner's fourth and final point, contesting the trial court's overruling of Petitioner's motion for continuance to show his Georgia conviction was void due to a Georgia Supreme Court decision issued after entry of the Georgia conviction, the state court of appeals found:

> Prior to trial, the State presented, without objection, authenticated copies of [Petitioner]'s convictions from Georgia and California. Based on these convictions, the trial court, again without objection, found that [Petitioner] was a prior and persistent offender. Over two months later, on the day of sentencing, [Petitioner] filed a motion to withdraw his status as a prior and persistent offender. In the motion, [Petitioner] stated that the sodomy statute, under which he had pled guilty in Georgia in 1998, was overturned later that same year. At the sentencing hearing, [Petitioner's] counsel[] stated he had recently learned this information through [Petitioner] and requested a continuance of fourteen or fifteen days to research the subject. The trial court declined to change its determination that [Petitioner] was a prior and persistent offender under Missouri law.
>
> The decision to grant a continuance lies within the sound discretion of the trial court. State v. Christeson, 50 S.W.3d 251, 261 (Mo. banc 2001). Reversal is warranted only upon a very strong showing that the trial court abused its discretion and prejudice resulted. Id. A continuance for trial counsel's preparation is not warranted when counsel had adequate time to prepare. Id. at 261-62.
>
> Here, the trial court did not abuse its discretion in denying [Petitioner]'s request for a continuance because [Petitioner] had more than adequate time to investigate the validity of his Georgia conviction. From the time of his Georgia conviction, in August 1998, to the time of his trial in Missouri, in July 2006, [Petitioner] had eight years to investigate the conviction and try to set it aside, if he questioned its validity. Following his trial in Missouri, [Petitioner] had over two months to investigate the validity of the Georgia conviction, yet did not do so.
>
> In addition, [Petitioner] has failed to show any prejudice resulted from the trial court's denial of his motion, as [Petitioner] has not shown further investigation would have voided his conviction under Georgia law.

The record shows [Petitioner] was initially charged in Georgia with rape, aggravated sodomy, and possession of a firearm by a felon. [Petitioner] later entered into a plea agreement where the aggravated sodomy charge was dropped to the lesser-included offense of sodomy.

Under the Georgia Supreme Court's ruling in Powell . . ., 510 S.E.2d [at] 26 . . . , the sodomy statute was found to be unconstitutional as applied to convict a defendant of sodomy [for] acts of unforced, consensual, noncommercial . . . adult sexual activity between persons legally able to consent. Powell does not apply to sexual acts committed by force. See Mauk v. State, 529 S.E.2d 197 (Ga. [Ct.] App. 2000). Here, even though the aggravated sodomy charge was reduced to sodomy, [Petitioner] was still charged with and convicted of rape, which is defined as having carnal knowledge with a female forcibly and against her will. Ga. Code Ann. Section 16-6-1. It is reasonable, therefore, to assume that [Petitioner]'s acts in Georgia involved force and that [Petitioner]'s conviction would not be void under Powell.

The trial court did not abuse its discretion in denying [Petitioner]'s motion for a continuance. Point IV is denied.

(Mem. Supplementing Order Affirming J. Pursuant to Missouri Supreme Court Rule 30.25(b), dated Feb. 5, 2008, Resp'ts Ex. E, at 15-17 (footnote omitted).)

Petitioner did not seek further review of the affirmance of his conviction. (See docket sheet for State v. McKenzie, No. ED89179 (Mo. Ct. App. filed with leave on Jan. 31, 2007) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited Aug. 28, 2013)).) The Missouri Court of Appeals issued its mandate regarding Petitioner's direct appeal on February 28, 2008. (See Feb. 28, 2008 entry on docket sheet for State v. McKenzie, No. ED89179 (Mo. Ct. App. filed with leave on Jan. 31, 2007) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited Aug. 28, 2013)).)

On May 20, 2008, Petitioner filed a pro se motion for post-conviction relief under Missouri Supreme Court Rule 29.15 ("post-conviction motion"). (Pet'r Post-Conviction Mot., Legal File, Resp'ts Ex. F, at 3-69). Through counsel, Petitioner subsequently filed an amended post-conviction motion ("amended motion"), including a request for an evidentiary hearing. (Pet'r Am. Mot., Legal File, Resp'ts Ex. F, at 74-150.) The original pro se post-conviction motion was attached to the amended motion, which expressly requested review of the claims in the pro-se motion. (Id.)

In his amended post-conviction motion, Petitioner first contended that his rights to due process and equal protection of the law, as well as to fair and impartial sentencing and the effective assistance of counsel, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, were violated by his trial attorney's failure to object to the enhanced sentence allegedly resulting from "taking his case to trial." (Legal File, Resp'ts Ex. F, at 75-80.) Petitioner also asserted nine other claims that his trial attorney provided ineffective assistance of counsel. Specifically, Petitioner argued his trial attorney provided ineffective assistance by failing to request a self-defense instruction on the assault offense involving Hagen (ground two); by failing to call Hendrickson as a witness (ground three); by failing to request a second-degree assault instruction with respect to the assault offense involving Victim (ground four); by failing to make a timely request for continuance to locate Hendrickson as a witness (ground five); by failing to object to the degree of medical certainty testimony of expert witness Dr. Case regarding the assault involving Hagen (ground six); by failing to

subpoena endorsed witness Evelynn Brennan[2] (ground seven); by failing to depose defense witness Hendrickson (ground eight); by misstating the facts of the case during his opening statement (ground nine); and by misinforming Petitioner about sentencing (ground ten). (Id. at 90, 92-105.)

Additionally, Petitioner asserted in his amended post-conviction motion five claims that his attorney on direct appeal provided ineffective assistance of counsel by failing to raise as trial court error: the failure to give a self-defense instruction on the assault offense involving Hagen (ground eleven); the overruling of Petitioner's objection to Officer Craig's testimony that Petitioner gave a false name when he was arrested (ground twelve); allowing Dr. Case to go beyond the scope of examination set by the trial court with respect to human bites, testimony pertaining to the assault involving Hagen (ground thirteen); limiting the questioning of the venire panel (ground fourteen); and allowing the State to use a human doll as demonstrative evidence (ground fifteen). (Id. at 91, 106-08.) For his sixteenth and final ground in his amended post-conviction motion, Petitioner argued that his attorney on direct appeal provided ineffective assistance by failing to pursue a motion for rehearing in the Court of Appeals or for transfer to the Missouri Supreme Court. (Id. at 108-10.)

---

[2] The record reveals the spelling of this person's last name as either "Brennon" (see, e.g., Pet'r Am. Mot., Resp'ts Ex. F at 100) or "Brennan" (see, e.g., Pet'r Br., Resp'ts Ex. G, at 14). The Court will spell this person's last name as "Brennan," the way the Missouri Court of Appeals spelled the name. (See, e.g., Order and Mem., filed Dec. 22, 2009, Resp'ts Ex. I, at 10.)

The motion court[3] denied Petitioner's post-conviction claims without an evidentiary hearing.  (See Findings of Fact and Conclusions of Law ("Motion Court Judgment"), filed Jan. 9, 2009, Post-Conviction Mot. Legal File, Resp'ts Ex. F, at 151-72.)  Petitioner timely appealed the denial of his amended motion.  (See Notice of Appeal, Post-Conviction Mot. Legal File, Resp'ts Ex. F, at 174.)

In his first point on appeal, Petitioner argued that his rights to due process, the effective assistance of counsel, and a fair and reliable sentencing under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated when his trial attorney failed to object to the post-trial imposition of maximum, consecutive sentences when the State's pretrial recommendation was twenty-five (25) years. (Pet'r Post-Conviction Appeal Br., Resp'ts  Ex. G, at 17 and 21.)  For his second point, Petitioner argued his rights to due process and the effective assistance of counsel as guaranteed by the Fifth, Sixth, and Fourteenth Amendments were violated when his trial attorney failed to present the testimony of Hendrickson, which would have established Petitioner resided at the home where the incident occurred and that Victim lied about telling Petitioner over the phone that he could not enter the home.  (Id. at 18 and 26.)  For his third point, Petitioner urged his rights to due process and the effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments were violated by his trial attorney's failure to present Brennan's testimony in that such testimony would establish that Petitioner's residence

---

[3] The judge presiding over Petitioner's post-conviction proceedings also presided over Petitioner's trial proceedings.

at the home where the incident occurred was lawful.  (Id. at 19 and 33.)  For his fourth

and final point, Petitioner contended that his Fifth, Sixth, and Fourteenth Amendment

rights to due process and the effective assistance of counsel were violated by his

appellate attorney's failure to seek rehearing or transfer or other correction of the

Missouri appellate court's conclusion that he "had been convicted of 'forcible' sodomy

in Georgia because he was also convicted of rape" in light of the "documentary proof"

Petitioner had tendered "showing the rape charge was dismissed."  (Id. at 20 and 37.)

On December 22, 2009, the Missouri Court of Appeals for the Eastern District

of Missouri affirmed the motion court's judgment in a summary order, supplemented by

a memorandum, which was sent only to the parties, setting forth the reasons for the

decision.  (Per Curiam Order and Mem. Supplementing Order Affirming J. Pursuant to

Rule 84.16(b), dated Dec. 22, 2009, Resp'ts Ex. I.)  In denying the first point challenging

Petitioner's trial attorney's failure to object to the trial court's imposition after trial of

consecutive maximum sentences, when the State had recommended twenty-five years

in a pre-trial plea bargain offer, the Missouri Court of Appeals concluded:

> Under [Mo. Rev. Stat. §] 557.036.1, the trial court shall decide the
> duration or extent of a defendant's sentence under all the circumstances,
> having regard for the circumstances and nature of the offense and the
> history and character of the defendant.  State v. Collins, 290 S.W.3d 736,
> 746 (Mo. [Ct.] App. 2009).  It is the trial court's duty to impose each
> sentence on a case-by-case basis, and to shape the punishment to fit both
> the crime and the criminal.  Id.  This Court assumes that the trial court's
> experience and expertise allows it to consider appropriate factors in
> sentencing and to disregard improper matters.  Id.

Trial courts have broad discretion in imposing sentences, but this discretion is not unlimited.  Id.  It is fundamental that a person convicted of a crime must not be subjected to more severe punishment simply because he exercised a constitutional right.  Id.  (quoting State v. Palmer, 193 S.W.3d 854, 856 (Mo. [Ct.] App. 2006).  A trial court cannot use the sentencing process to punish a defendant for exercising the right to a full and fair trial.  Id.  While a trial court may not punish a defendant for exercising his right not to plead guilty, it may take into account the defendant's character, including the defendant's attitude towards the offense.  Id.  It is not error for a trial court to consider other factors aside from a defendant's assertion of his right to a full and fair trial in sentencing a defendant, "so that a comment on the defendant's assertion of his right is not the determinative factor in imposing sentence."  Id.

In the present case, the trial court did not comment on [Petitioner]'s assertion of his constitutional right to a trial or to his rejection of the State's plea offer.  What the trial court did do in sentencing is consider [Petitioner]'s character, criminal history, and attitude towards the offenses.  The trial court stated, in part:

> Your record is very disturbing, with criminal conduct of a serious nature, of an aggressive nature, of a sexual nature, both in California and in Georgia, and then your behavior here.  And I don't know how a fair-minded person could listen to the evidence in this case, and look at the crimes that you've been convicted of, Mr. McKenzie, and come to [a] conclusion other than you are a very dangerous individual.
>
> . . .
>
> But there's been enough criminal behavior prosecuted, and there's been enough criminal behavior convicted to cause anyone to know that when you're out and about in society, that you're dangerous; and you're dangerous to women in particular.
>
> And so the sentence of the Court will reflect all of this.

The sentences imposed by the trial court were within the statutory ranges for those crimes.  Nothing in the record indicates that the trial court

punished [Petitioner] more severely for exercising his right to a full and fair trial, and [Petitioner]'s assertion that it should be "presumed" that the trial court was punishing him is mere speculation at best, and in view of the trial court's comments quoted above, speculation devoid of any substance. Any objection by trial counsel would have been without merit. The mere failure to object does not constitute ineffective assistance of counsel, and trial counsel is not ineffective for not making non-meritorious objections. Zink v. State, 278 S.W[.]3d 170, 188 (Mo. banc 2009). Point denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Dec. 22, 2009, Resp'ts Ex. I, at 5-7.)

In denying Petitioner's second point, which asserted his trial attorney provided ineffective assistance in failing to present Hendrickson's testimony, the state appellate court found

[Petitioner] asserts that [Hendrickson]'s testimony would have shown that [Petitioner] resided at the same address as [Hendrickson] and [Victim] and that [Victim] lied about having told [Petitioner] over [Hendrickson]'s cell phone that he could not enter the residence. [Petitioner] avers that the motion court's conclusion that this claim was refuted by the record and contradicted by [Victim]'s refusals, express and implied, to admit [Petitioner] "leave a definite and firm impression that a mistake has been made."

This claim of error relates to [Petitioner]'s conviction for the charge of burglary in the first degree for the unlawful entry into [Victim]'s residence to assault her. [Victim] testified that she lived at the residence with her boyfriend, [Petitioner]'s son, whom she had dated for more than two years. She stated that [Petitioner] did not live at the residence with them, that he did not have a key to the house, but would come over from time to time. [Petitioner] stayed with [Hendrickson] once when [Victim] visited her family in Indiana. On the date of the incident, [Victim] was home alone when a woman dropped [Petitioner], who was intoxicated, at her house in the mid-afternoon. [Hendrickson] was not home, having gone out to drink. While [Victim] initially allowed [Petitioner] into the house, where he urinated over the bathroom floor, he went back outside and

- 28 -

passed out, and she locked the doors. [Victim] testified that a few hours later, [Petitioner] woke up, pounded on the doors and requested entry, but [Victim] would not let him in, even though he pounded on the windows, tried to pull off the screens, and urinated outside. [Victim] stated that she tried to reach [Hendrickson] through his cell phone and via texting, to no avail. [Petitioner] again passed out, eventually woke up, and left with another man. She testified later that night, after she had gone to bed, she heard [Petitioner] banging on the door, demanding to be let in, and then tr[ying] to pry off the screen to the bedroom window. [Victim] tried to call [Hendrickson]'s cell phone, but [Petitioner] answered it, and he did not know how he came into possession of it. She stated that she told [Petitioner] that she did not want him at the house without [Hendrickson] being there, and that [Hendrickson] was not there. [Petitioner] screamed to be let in, and she hung up the phone. Her neighbor, . . . Hagen, saw [Petitioner] outside of the house and called police, who responded. After the police left, [Victim] went back to bed, heard a window break, and . . . called 911, but hung up when she saw [Petitioner] in the house. [Petitioner] tried to strangle [Victim].

[Petitioner] presented four witnesses who testified that he had stayed at the home of [Hendrickson] and [Victim], keeping luggage and some clothing there. [Hendrickson] had been present on the first day of the trial, but left before these defense witnesses had finished testifying. Trial counsel had a subpoena hand-delivered to [Hendrickson] to appear and testify the following day, but [Hendrickson] failed to appear. Trial counsel for [Petitioner] rested his case, but requested that a transcript of [Hendrickson]'s taped statement to the police from July 5, 2005, be entered into evidence, and alternatively requested a recess for law enforcement to try to retrieve [Hendrickson]. The State opposed both of these requests on the basis that [Hendrickson] was not truly unavailable; rather he simply chose not to show up and testify. Trial counsel made an offer of proof with the transcript of the taped statement. After the instruction conference, trial counsel requested a mistrial on the ground that he had requested a continuance so that law enforcement officers could get [Hendrickson], and the trial court had denied that "motion." The trial court denied that motion, and trial counsel made another offer of proof, namely that [Hendrickson] would have testified that he gave [Petitioner] permission to stay at the house on the night of the incident.

In a claim that counsel was ineffective for failure to call a witness, a movant must show that the witness was available to testify, would

testify if called, and that the witness's testimony would provide a viable defense. Rotellini v. State, 77 S.W.3d 632, 635 (Mo. [Ct.] App. 2002). The motion court found that trial counsel did everything that he could to secure [Hendrickson] as a witness, that [Hendrickson]'s testimony would not have provided [Petitioner] with a viable defense in light of [Victim]'s testimony, and that the outcome of the trial would not have been different had [Hendrickson] testified. It further found that even if trial counsel had made the request for a recess for law enforcement officers to try to retrieve [Hendrickson] sooner, the outcome would not have been different, noting that trial counsel had subpoenaed [Hendrickson] "to no avail." Given that trial counsel had subpoenaed [Hendrickson] to appear and testify on July 13th, and his efforts to contact him [failed], it is difficult to see how trial counsel could be deemed to be ineffective for failing to secure the testimony of [Hendrickson], who was well aware of his father's trial and the desire for his testimony. As in Rotellini, trial counsel took reasonable steps to call a person, [Hendrickson], as a witness, and subpoenaed him. In addition, this Court previously held in the direct appeal of [Petitioner]'s conviction, State v. McKenzie, that "[t]he trial court did not err, plainly or otherwise, in failing to grant a continuance or a writ of body attachment, . . . , to obtain [Hendrickson]'s testimony. [Petitioner] failed to show [Hendrickson]'s attendance could be procured within a reasonable time." This Court also held that [Petitioner] failed to show that [Hendrickson]'s testimony would have provided a defense to the burglary charge, even if [Hendrickson] had given [Petitioner] permission to stay at the house, "any alleged permission was revoked when [Victim] refused to let [Petitioner] in." Trial counsel was not ineffective for failing to secure [Henrickson]'s testimony, where trial counsel made reasonable efforts to ensure that [Hendrickson] would appear to testify, and where [Hendrickson]'s testimony would not have provided a viable defense. Point [two] denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Dec. 22, 2009, Resp't's Ex. I, at 7-10.)

With respect to his third point, in which Petitioner challenged as ineffective assistance his trial attorney's failure to present the testimony of Brennan, because that

testimony would have shown that he was a lawful resident at the house, the state

appellate court concluded

> In a claim that counsel was ineffective for failure to call a witness, a movant must show that the witness was available to testify, [that the witness] would testify if called, and that the witness's testimony would provide a viable defense. [Rotellini, 77 S.W.3d at 635.] [Petitioner] did not plead in his amended motion for post-conviction relief that Brennan, the owner and landlord of the house in which [Hendrickson] and [Victim] resided, was available and willing to testify; rather he pleaded what Brennan would have said had she been called and had she testified. [Petitioner] asserts that her availability and willingness to testify are implicit in this claim of ineffective assistance of counsel. However, courts will not draw implications or factual inferences in a motion for post-conviction relief under [Mo. S. Ct.] Rule 29.15 from bare conclusions or a prayer for relief. Barnett v. State, 103 S.W.3d 765, 769 (Mo. [b]anc 2003). Assuming arguendo that [Petitioner] had pleaded as to Brennan's availability and willingness to testify, her testimony would not have provided him with a viable defense, as the motion court correctly found. Brennan's purported testimony would have shown that [Petitioner] had permission to stay at the house in the past when [Hendrickson] and [Victim] were out of town, but not that he had permission to stay there thereafter. And as the motion court observed, even if Brennan had given [Petitioner] permission to stay at the house, such permission was revoked both expressly and impliedly by [Victim] on the night of the incident, and his entry via breaking a window was not permitted. Counsel was not ineffective for failing to call Brennan as a witness. Point [three] denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Dec. 22,

2009, Resp't's Ex. I, at 10-11.)

In denying the fourth and final point in Petitioner's post-conviction appeal, which

presented the issue whether his appellate attorney provided ineffective assistance in

failing to ask the state appellate court to correct its conclusion that Petitioner "had been

convicted of 'forcible' sodomy in Georgia because he was also convicted of rape," the

Missouri Court of Appeals stated:

> . . . [C]ertified copies of [Petitioner]'s convictions had been entered
> into the record without objection, and the trial court found him to be a
> prior and persistent offender. More than two months later at sentencing,
> [Petitioner] filed a motion to withdraw his status as a prior and persistent
> offender, asserting that the Georgia sodomy statute under which he had
> pleaded guilty in 1998 had been overturned later that same year.
> [Petitioner]'s trial counsel asked for a continuance to research the issue,
> but the trial court denied the motion to grant a continuance.

> On direct appeal, this Court held that the trial court did not abuse
> its discretion in denying [Petitioner]'s request for a continuance to
> research whether his prior Georgia conviction was void, noting that
> [Petitioner] had eight years since his 1998 conviction until his 2006
> Missouri trial to investigate and challenge the validity of his Georgia
> conviction, and he failed to do so. We further observed that he had more
> than two months following his Missouri convictions prior to sentencing
> to investigate the validity of the Georgia conviction, and did not do so.
> This Court also held that he failed to show prejudice from the denial of his
> motion as he did not show that further investigation would have voided
> his conviction under Georgia law. The record showed that [Petitioner]
> had been charged with rape, aggravated sodomy and possession of a
> firearm by a felon, but he entered into a plea agreement whereby the
> aggravated sodomy charge was reduced to the lesser-included offense of
> sodomy. We held that though the aggravated sodomy charge had been
> reduced to sodomy, [Petitioner] had still been convicted of rape, which is
> defined as having carnal knowledge of a female forcibly and against her
> will. Accordingly, this Court held it reasonable to assume that
> [Petitioner]'s acts in Georgia involved force, and that his conviction would
> not be void under Powell . . . , 510 S.E.2d [at] 26 . . . , which held the
> Georgia sodomy statute to be unconstitutional as applied to convict a
> person of sodomy for acts of unforced, consensual, noncommercial acts
> between adults.

> In his amended motion for post-conviction relief, [Petitioner]
> pleaded that his appellate counsel was ineffective for failing to file a
> motion for rehearing with this Court or a motion for transfer to the
> Missouri Supreme Court, asserting that this Court was incorrect when it

held that he had been charged with and convicted of rape, and that his acts in Georgia involved force and would not be void under <u>Powell</u>. The motion court found that appellate counsel is not required to file such motions, and accordingly the facts alleged by [Petitioner] did not warrant relief.

Motions for rehearing and motions for transfer are not matters of right; they are forms of discretionary review. <u>See</u> <u>Kennedy v. State</u>, 771 S.W.2d 852, 859 (Mo. [Ct.] App. 1989); <u>State v. Barnes</u>, 517 S.W.2d 155, 168-70 (Mo. [Ct.] App. 1974). There is no constitutional right to counsel to pursue discretionary state appeals or applications for review in the Supreme Court, and since there is no constitutional right to counsel, a defendant cannot be deprived of the effective assistance of counsel for counsel's failure to pursue a matter of discretionary review. <u>See</u> <u>Wainwright v. Torna</u>, 455 U.S. 586, 586-88 . . . (1982) [(per curiam)]; <u>Kennedy</u>, 771 S.W.2d at 859; <u>Barnes</u>, 517 S.W.2d at 168-70. Appellate counsel was not ineffective for failing to file motions for rehearing or transfer, and the motion court did not clearly err. Point [four] denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Dec. 22, 2009, Resp'ts Ex. I, at 11-13 (footnote omitted).) The Missouri Court of Appeals also expressly noted that the Georgia Supreme Court's decision in "<u>Powell</u> does not apply to sexual acts committed by force. <u>See</u> <u>Mauk . . .</u>, [<u>supra</u>]." (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Dec. 22, 2009, Resp'ts Ex. I, at at 13 n.1.)

Petitioner's motion for rehearing or transfer to the Missouri Supreme Court was denied on January 25, 2010, and the Missouri Court of Appeals issued its mandate with respect to Petitioner's post-conviction appeal on February 18, 2010. (<u>See</u> docket sheet for <u>McKenzie v. State</u>, No. ED92642 (Mo. Ct. App. filed on Feb. 17, 2009 (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited Aug. 28, 2013)).)

On August 11, 2010, Petitioner filed his original federal habeas petition. Petitioner asserts eleven grounds for relief in that petition. Petitioner first argues that there was insufficient evidence of the first degree burglary offense, because there was no evidence that he intended to assault Victim when he entered the house (ground one). (Pet'r Pet. [Doc. 1 at 11].) Petitioner next urges that his rights to a fundamentally fair trial and to compulsory process were violated by the trial court's denial of Petitioner's request for a continuance or to obtain a writ of attachment to compel Hendrickson's attendance at trial (ground two). (Pet'r Pet [Doc. 1 at 12].) Then Petitioner asserts that his right to a fundamentally fair trial was violated when the trial court refused Petitioner's lesser-included offense verdict director for second-degree assault focusing on the assault involving Victim (ground three) (Pet'r Pet [Doc. 1 at 13]) and when the trial court overruled Petitioner's motion for continuance to show that the Georgia conviction was void (ground four) (Pet'r Pet [Doc. 1 at 14]). Petitioner additionally contends that his rights to due process, the effective assistance of counsel, and fair and reliable sentencing under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated when his trial attorney failed to object to the trial court's post-trial imposition of a long sentence after the State had offered, prior to trial, a twenty-five year sentence (ground five). (Pet'r Pet [Doc. 1 at 15].) Petitioner also urges his Fifth, Sixth, and Fourteenth Amendment rights to due process and the effective assistance of counsel were violated by his trial attorney's failure to present the testimony of Hendrickson (ground six) and of Brennan (ground seven). (Pet'r Pet [Doc. 1 at 16-17, 18].) For his

eighth ground, Petitioner argues that his Fifth, Sixth, and Fourteenth Amendment rights to due process and the effective assistance of counsel were violated when his attorney on direct appeal failed to seek rehearing, transfer, or other correction of the state appellate court's determination that Petitioner's Georgia conviction included a conviction for rape and therefore his sodomy conviction was not void under **Powell**, supra, because it involved force (ground eight). Petitioner further asserts that he is actually innocent of the crime of first-degree burglary because, as Hendrickson's testimony would establish, he had permission to be inside the home (ground nine). (Pet'r Pet. [Doc. 1 at 20-22].) Next Petitioner contends a miscarriage of justice occurred in that he received an enhanced sentence due to his persistent offender status, which was based on an unconstitutional Georgia conviction (ground ten). (Pet'r Pet. [Doc. 1 at 23-26].) For his eleventh ground, Petitioner argues that there was a miscarriage of justice when, prior to trial, his trial attorney, the prosecutor, and the trial court misinformed him about his persistent offender status and the length of the sentence he faced (ground eleven). (Pet'r Pet [Doc. 1 at 27-30].)

Respondents posit that Petitioner exhausted his available state remedies for the eleven claims; that the third and ninth grounds seek relief based on claims that are not cognizable in a federal habeas proceeding; that the second, seventh, tenth, and eleventh grounds are procedurally defaulted, and Petitioner has not demonstrated either cause and prejudice or actual innocence to allow the Court to address the merits of those four claims; and that all the claims lack merit. (Resp'ts Response [Doc. 14].)

Petitioner's reply addressed only Respondents' arguments regarding the first and sixth grounds for relief.  (Pet'r Reply [Doc. 16].)

Petitioner subsequently sought leave to amend his original petition, but did not accompany the request with a proposed amended petition [Doc. 17].  The Court directed Petitioner to submit a proposed amended petition, directed Respondents to respond to the motion and any proposed amended petition submitted by Petitioner, and advised Petitioner, in relevant part, that even if the amendment was filed, such filing was no indication "that the matter(s) presented in the amendment will be considered on the merits."  (Order, dated Oct. 15, 2012 [Doc. 19].)   Petitioner submitted an amended petition on November 1, 2012 [Doc. 20], and Respondents filed their response to the motion and the amended petition on February 8, 2013 [Doc. 27], with Petitioner filing a reply on February 22, 2013 [Doc. 30].  The Court subsequently granted leave to file the amended petition on February 11, 2013 [Doc. 29].

In his amended petition, Petitioner set forth three grounds for relief, stated that it was his "intent that this Amended Petition will supersede the original Petition," and requested an evidentiary hearing.  Petitioner asserts as the first ground in the amended petition (ground twelve), which reportedly is an amendment of ground eleven in the original petition, that his Sixth and Fourteenth Amendment rights were violated when his trial attorney told him that, upon conviction, he could not receive any sentence greater than the twenty-five year term of imprisonment the State had offered in the plea negotiation; and, if he had known he was subject to receiving three consecutive life

sentences if found guilty as charged, he would have pleaded guilty to all charges and received a twenty-five year term of imprisonment, rather than the total sentence of life plus thirty years plus one year he received after trial.  (<u>Id.</u> at 17-29.)  For the second ground in his amended petition (ground thirteen), Petitioner states the claim "is related to Grounds Four, Eight, and Ten of the original Petition" and claims his Sixth and Fourteenth Amendment rights to the effective assistance of counsel were violated when his trial attorney failed to investigate and to file a petition for writ of habeas corpus in Georgia to challenge the Georgia conviction that was used to find Petitioner was a persistent offender.  (<u>Id.</u> at 30-41.)  For the third and final claim in the amended petition (ground fourteen), which Petitioner characterizes as "the same as Ground Ten of the original Petition," Petitioner asserts his Fifth, Eighth, and Fourteenth Amendment rights to due process, to equal protection, and to be free from cruel and unusual punishment were violated by the determination that he was a "persistent offender" and by the enhancement of his sentence based on a void sodomy conviction, the Georgia conviction.  (<u>Id.</u> at 42- 48.)

In their response [Doc. 27], Respondents argue that the amended petition should be denied because it was not timely filed.  Additionally, Respondents contend each of the claims in the amended petition is procedurally defaulted because it was not raised in the post-conviction appeal (ground twelve), was not pursued in the pro se or amended post-conviction motions (ground thirteen), or was not presented at trial or on direct

appeal (ground fourteen). Finally, Respondents urge each of the claims in the amended petition lacks merit.

## DISCUSSION

The Court will first address whether or not it may consider the claims in the amended petition in light of Respondents' contention the amended petition is untimely; and then will address procedural issues and the merits of the claims that are properly before the Court.

Timeliness - Amended Petition. To be considered timely under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must, in relevant part, file a habeas petition within one year after either the conclusion of direct review in state court or the expiration of time for seeking such review, with that one-year period tolled while any properly filed post-conviction motion or other application for collateral relief is pending in state court. 28 U.S.C. § 2244(d)(1)(A) and § 2244(d)(2). Here, Petitioner obtained leave to file a late direct appeal from the trial court's judgment, and then did not pursue review in a higher court after the Missouri Court of Appeals issued its decision on February 5, 2008. Therefore, the date the underlying trial court judgment became final for purposes of calculating the AEDPA's limitations period was the date when Petitioner's "time for seeking review with the State's highest court expired." **Gonzalez v. Thaler**, 132 S. Ct. 641, 656 (2012). Missouri Supreme Court Rule 83.02 gave Petitioner fifteen days after the filing of the state appellate court's opinion to seek such review, which means the trial court judgment

was final, for purposes of the AEDPA's limitations period, fifteen days after February 5, 2008, or as of February 20, 2008. Therefore, Petitioner had one year, or until February 20, 2009, to file a timely habeas petition unless a properly filed post-conviction proceeding was "pending" pursuant to 28 U.S.C. § 2244(d)(2).

To be "properly filed," Petitioner had to file a post-conviction motion within ninety days after the state appellate court issued its mandate in the direct appeal. Mo. S. Ct. Rule 29.15(b). The Missouri Court of Appeals issued the mandate in Petitioner's direct appeal on February 28, 2008; therefore, Petitioner had ninety days after February 28, 2008, or until May 28, 2008, to file a timely post-conviction motion. Petitioner filed his post-conviction motion on May 20, 2008. There is no contention that his timely post-conviction motion was not otherwise "properly filed." Therefore, Petitioner had pending a properly filed post-conviction motion that could toll the AEDPA's limitations period under § 2244(d)(2).

The ninety-day period between the completion of direct review of Petitioner's trial court judgment on February 20, 2008, as calculated under the AEDPA, and Petitioner's filing of his timely post-conviction motion on May 20, 2008, however, is deducted from the AEDPA's one-year limitation period. See, e.g., **McMullan v. Roper**, 599 F.3d 849, 852 (8th Cir. 2010) ("[t]he time between the conclusion of a direct appeal and the filing of a ['properly filed'] state court application for post-conviction relief does not toll the AEDPA statute of limitations"). Therefore, at the time Petitioner filed his post-conviction motion, he had 275 days to file a timely federal habeas petition

(365 day limitation period under the AEDPA less the 90 days between issuance of the opinion affirming the trial court judgment and the filing of Petitioner's post-conviction motion).

Although the AEDPA's one-year limitation period is not tolled between the conclusion of the direct appeal and the filing of a properly filed post-conviction motion, that period is tolled while the properly filed post-conviction proceeding is pending. See 28 U.S.C. § 2244(d)(2). Specifically, that period is "tolled until the Missouri Court of Appeals issue[s] its mandate denying [the timely filed post-conviction] appeal." **Id.** at 853; see also **Lawrence v. Florida**, 549 U.S. 327, 332 (2007) (concluding a state post-conviction proceeding is not "pending" for purposes of the AEDPA during the pendency of a petition for certiorari in the United States Supreme Court; and specifically noting that the state post-conviction motion is "not 'pending' after the state court's postconviction review is complete"); **Evans v. Chavis**, 546 U.S. 189, 191 (2006) (noting that the post-conviction application is "pending" for purposes of the AEDPA during the period between the lower court's adverse decision and the filing of a timely notice of appeal from that decision). Although it is not clear to what extent those decisions may be affected by the more recent decision of the United States Supreme Court in **Gonzalez**, 132 S. Ct. at 652-54, which focused on the issue of the finality of a direct appeal, rather than on the pendency of the post-conviction proceeding, under the AEDPA, this Court will use the date the Missouri Court of Appeals issued the mandate in Petitioner's post-conviction appeal as the date Petitioner's post-conviction proceeding

was no longer "pending" for purposes of the AEDPA's limitation period.  See **McMullan**, 599 F.3d at 853.  Therefore, Petitioner's post-conviction proceeding was no longer pending as of February 18, 2010, the date the Missouri Court of Appeals issued its mandate in Petitioner's post-conviction appeal.  As noted earlier, Petitioner had 275 days, or until November 22, 2010,[4] to file a timely federal habeas petition; and timely filed his original habeas petition on August 11, 2010.

Petitioner did not, however, submit his amended habeas petition before the AEDPA's one-year limitations period expired on November 22, 2010; but instead submitted it almost two years later, on November 1, 2012.[5]  The Court will therefore consider whether either equitable tolling or an indication of Petitioner's actual innocence permits consideration of the amended petition as timely filed.

In addition to the extension of the one-year limitation period under § 2244(d)(2), the one-year period under § 2244(d)(1) may be extended through "equitable tolling in appropriate cases." **Holland v. Florida**, 130 S. Ct. 2549, 2560 (2010).  A petitioner seeking the benefit of equitable tolling must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way'" so as to prevent timely filing.  **Id.** at 2562 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418

---

[4]  The last day of the 275-day period is a weekend day; therefore, Petitioner had until Monday, November 22, 2010, to file his habeas petition.

[5]  Even if the Court made the calculation of timeliness from the date Petitioner originally asked to amend the petition, or April 25, 2012, see Pet'r Mot. Stay [Doc. 17], that date is more than a year after expiration of the AEDPA's one-year limitation period and the amended petition must still be considered untimely.

(2005)); see also **Johnson v. Hobbs**, 678 F.3d 607, 610 (8th Cir. 2012). Notably, "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" **Holland**, 130 S. Ct. at 2565 (some internal quotation marks omitted) (citations omitted). Additionally,

> [t]he extraordinary circumstance that prevents a petitioner from timely filing his federal [habeas] application must be external to the petitioner and not attributable to his actions. Riddle v. Kemna, 523 F.3d 850, 857 (8th Cir. 2008) (en banc) (abrogated on other grounds by Gonzalez, 132 S. Ct. at 653-54).

**Johnson**, 678 F.3d at 611.

In his reply in support of the amended petition, Petitioner argues that a legal basis for addressing the defaulted ineffective assistance of trial counsel claims in grounds one and two of the amended petition (referred to as grounds twelve and thirteen) was not available until March 20, 2012, when the United States Supreme Court issued its decision in **Martinez v. Ryan**, 132 S. Ct. 1309 (2012). In that decision the Supreme Court held that the ineffective assistance of a federal habeas petitioner's post-conviction motion counsel may establish cause for the petitioner's failure properly to present an ineffective assistance of trial counsel claim in state court. **Id.** at 1318, 1320. To the extent that basis for "cause" for a procedurally defaulted ineffective assistance of counsel claim was previously unavailable to Petitioner and that unavailability should be considered as satisfying the "extraordinary circumstance" element for equitable tolling of the AEDPA's one-year limitations period, that basis for "cause" does not apply to any claim other than ineffective assistance of counsel claims, and therefore would not apply

to the claim set forth as ground fourteen, the third claim in the amended petition. Therefore, to the extent the issuance of the **Martinez** decision should be deemed to support the extraordinary circumstance requirement for equitable tolling of the one-year time limitations period, it cannot satisfy that requirement here because not all of the claims in Petitioner's amended petition are subject to **Martinez**. Accordingly, equitable tolling does not apply to lengthen the one-year limitations period applicable to this habeas proceeding.

Finally, the AEDPA's one-year limitations period can also be overcome, in rare instances, by a showing of actual innocence. **McQuiggin v. Perkins**, 133 S. Ct. 1924 (2013). To the extent this exception may apply here, it requires Petitioner to present a credible claim of actual innocence based on new evidence and to "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" of his innocence. **Id.** at 1935 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995) (internal quotation marks omitted)). Petitioner does not claim that his actual innocence should allow him to pursue his untimely amended petition, and has not presented any new evidence of his actual innocence of the burglary and assault offenses at issue here. Therefore, Petitioner's "actual innocence" cannot constitute a basis for finding the amended petition was timely filed.

Claims in an amended habeas petition filed after the expiration of the AEDPA's limitations period may not be considered if they do not "relate back" to the date of the original habeas petition. **Mayle v. Felix**, 545 U.S. 644, 655 (2005) (discussing an

amended petition under prior Federal Rule of Civil Procedure 15(c)(2), the predecessor of what is now Rule 15(c)(1)(B)); accord **McKay v. Purkett**, 255 F.3d 660 (8th Cir. 2001) (per curiam) (same, and finding no abuse of discretion in the district court's dismissal of an amended habeas petition as untimely when the claims in that petition did not relate back to the claims in the original, timely-filed habeas petition). Claims relate back to the original claims when the amended claims arise out of the "conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

To relate back in federal habeas proceedings, the amended claims must be of the same "time and type" as the original claims, and the original and amended claims must be "tied to a common core of operative facts." **Mayle**, 545 U.S. at 650, 664. In **Mayle**, the Supreme Court specifically held that "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." **Mayle**, 545 U.S. at 650.

Here, the second ground in the untimely amended petition (the claim the Court refers to as ground thirteen) is not of the same time and type as, and does not arise out of a core of operative facts common to, the reportedly related claims in the timely original habeas petition. For ground thirteen, Petitioner asserts he was denied the effective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights when his trial attorney failed to investigate and file a state habeas petition in

Georgia challenging the sodomy conviction used to find Petitioner was a persistent offender in the Missouri trial court proceedings underlying this habeas proceeding. Petitioner reports that claim is related to grounds four, eight, and ten in his original habeas petition. In ground four of the original habeas petition, Petitioner asserts that the trial court erred in overruling Petitioner's motion for continuance "to show that his prior Georgia conviction was void." In ground eight of the original habeas petition, Petitioner asserts his rights under the Fifth, Sixth, and Fourteenth Amendments were violated by his appellate attorney's failure to seek rehearing, transfer, or other correction of the state appellate court's conclusion on direct appeal that he had been convicted in Georgia of rape, indicating that the Georgia sodomy conviction involved force. In ground ten, Petitioner contends there was a miscarriage of justice in the trial court finding him to be a persistent offender based on the Georgia "conviction that was ruled to have been unconstitutional, and the enhancing [of] his sentence as a result."

None of the three noted claims in Petitioner's timely original habeas petition are ineffective assistance of trial counsel claims, are based on trial counsel's alleged failure to pursue a state habeas proceeding in Georgia to challenge Petitioner's Georgia conviction, or clearly pertain to a period of time encompassed by Petitioner's trial attorney's alleged failure to pursue a Georgia state habeas petition. Due to the absence of a common core of operative facts and the lack of similarity in the time and type of claims presented in ground thirteen in the amended habeas petition and in grounds four,

eight, and ten in the original habeas petition, Petitioner's untimely amended habeas petition does not relate back to the timely-filed original habeas petition.

Therefore, the amended petition should be dismissed as untimely and the Court will not address the procedural issues pertaining to or the merits of the grounds for relief in the amended habeas petition. With respect to any request related to the amended petition that may remain pending at this time, all such pending requests will be denied as moot without further discussion due to the untimeliness of the amended petition.

The Court will next address the Respondents' arguments that the Court cannot address the merits of six of the claims in Petitioner's original petition because either they are not cognizable in a federal habeas proceeding or are procedurally defaulted.

Claims Not Cognizable - Grounds Three and Nine. Respondents contend that two of Petitioner's original grounds for relief, grounds three and nine, are not cognizable in a federal habeas proceeding. Petitioner has not specifically responded to this argument.

In ground three, Petitioner asserts that his right to a fundamentally fair trial was violated when the trial court refused Petitioner's lesser-included offense verdict director for second-degree assault focusing on the assault involving Victim. Due process "rarely, if ever," requires the giving of a lesser-included offense instruction in a noncapital case, such as Petitioner's case. **Pitts v. Lockhart**, 911 F.2d 109, 112 (8th Cir. 1990); accord **Green v. Groose**, 959 F.2d 708, 709 (8th Cir. 1992) (per curiam) (failure to instruct on lesser-included offense); **Turner v. Armontrout**, 922 F.2d 492, 494 (8th Cir. 1991)

(improper instruction on lesser-included offense). Notably, the Eighth Circuit has concluded that such a claim "does not present a constitutional question cognizable on federal habeas review." **Green**, 959 F.2d at 709 (internal quotation marks omitted) (quoting <u>Turner</u>, 922 F.2d at 494). More recently, the Eighth Circuit observed that the United States "Supreme Court 'has never held that there is a constitutional requirement that lesser-included offense instructions be given in noncapital cases.'" **Arnold v. Dormire**, 675 F.3d 1082, 1086 (8th Cir. 2012) (quoting <u>Carney v. Fabian</u>, 487 F.3d 1094, 1097 (8th Cir. 2007)). Without a constitutional basis for the claim, it is not cognizable in a federal habeas proceeding. <u>See</u> **Green**, 959 F.2d at 709. Accordingly, ground three is not cognizable in this proceeding.

In ground nine, Petitioner contends that he is actually innocent of the crime of first-degree burglary because, as Hendrickson's testimony would establish, he had permission to be inside the home. The United States Supreme Court has not recognized free-standing claims of "actual innocence" as constitutional grounds for review in a federal habeas proceeding. **McQuiggin**, 133 S. Ct. at 1931 ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"); **Herrera v. Collins**, 506 U.S. 390, 400-02, 404-05 (1993) (noting that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding"; stating that the "body of [the Supreme Court's] habeas jurisprudence makes clear that a claim of 'actual

innocence' is not itself a constitutional claim"; and concluding that the petitioner was not entitled to relief because he claimed he was "entitled to habeas relief because newly discovered evidence show[ed] that his conviction [wa]s factually incorrect"); accord **Burton v. Dormire**, 295 F.3d 839, 848 (8th Cir. 2002) ("we have squarely rejected the notion that a prisoner may receive a writ simply because he claims he is innocent . . . . [T]hus [the petitioner]'s claim of innocence does not entitle him to a writ"); cf. **Schlup**, 513 U.S. at 315 (distinguishing Herrera upon concluding that the petitioner's claim was not itself a constitutional claim of innocence barred by Herrera but a gateway claim of actual innocence to obtain consideration of the merits of an otherwise barred claim). A free-standing claim of innocence, the Eighth Circuit has expressly concluded, is not cognizable in a federal habeas proceeding. **Meadows v. Delo**, 99 F.3d 280, 283 (8th Cir. 1996). Petitioner's claim in ground nine is a free-standing actual innocence claim that is not cognizable in this habeas proceeding.

Concluding that the claims in grounds three and nine should be denied because they are not cognizable in a federal habeas proceeding, the Court will not further address either any procedural issues related to those two grounds or the merits of those two grounds.

Procedurally Defaulted Claims - Grounds Two, Seven, Ten, and Eleven. Respondents contend the Court should not address the merits of grounds two, seven, ten, and eleven because those claims are procedurally defaulted, and Petitioner has not

demonstrated either cause and prejudice or actual innocence to avoid that default. Petitioner has not expressly responded to this argument.

In ground two, Petitioner argues that his rights to a fundamentally fair trial and to compulsory process were violated by the trial court's denial of Petitioner's requests for a continuance or to obtain a writ of attachment to compel Hendrickson's attendance at trial. Respondents urge this ground is defaulted because Petitioner failed timely to assert the requests, and the state appellate court declined to review the claim for plain error.

In ground seven, Petitioner contends his Fifth, Sixth, and Fourteenth Amendment rights to due process and the effective assistance of counsel were violated by his trial attorney's failure to present Brennan's testimony. Respondents argue this ground is procedurally defaulted because the state appellate court denied relief on the grounds the claim was not pleaded sufficiently and such a finding constitutes a procedural default foreclosing federal habeas review, citing **Smith v. Groose**, 998 F.2d 1439, 1441 (8th Cir. 1993).

For grounds ten and eleven, Petitioner urges a miscarriage of justice occurred in that he received an enhanced sentence due to his persistent offender status, which was based on an unconstitutional Georgia conviction (ground ten) and in that, prior to trial, his trial attorney, the prosecutor, and the trial court misinformed him about his persistent offender status and the length of the sentence he faced (ground eleven). Respondents

contend these grounds for relief are procedurally barred because Petitioner did not present them to the trial court and, if necessary, on direct appeal.

To avoid procedurally defaulting on a claim, a federal habeas petitioner must have first fairly presented the substance of the claim to the state courts to afford the state courts a fair opportunity to apply controlling legal principles to the facts pertinent to the claim. **Wemark v. Iowa**, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (internal quotation marks and citations omitted) (citing, in part, to <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982) (per curiam)); <u>accord</u> **Baldwin v. Reese**, 541 U.S. 27, 29 (2004). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. **Wemark**, 322 F.3d at 1021 (internal quotation marks and citations omitted). Claims that have not been fairly presented to the state courts are procedurally defaulted. **Id.** at 1022 (quoting <u>Gray v. Netherland</u>, 518 U.S. 152, 161-62 (1996)).

Missouri requires the raising of constitutional claims at the first available opportunity. <u>See</u> **In re J.M.N.**, 134 S.W.3d 58, 73 (Mo. Ct. App. 2004); **In re T. E.**, 35 S.W.3d 497, 504 (Mo. Ct. App. 2001). Alleged trial court errors, including constitutional claims of trial court error, must be raised on direct appeal; for "[p]ost-conviction motions cannot be used as a substitute for direct appeal or to obtain a second appellate review." **State v. Clark**, 859 S.W.2d 782, 789 (Mo. Ct. App. 1993); <u>accord</u> **State v. Twenter**, 818 S.W.2d 628, 636 (Mo. 1991) (en banc) (a post-conviction proceeding "is not a substitute for direct appeal, and matters that properly should have

been raised by direct appeal may not be litigated in a post-conviction proceeding"). "If the allegations of trial error are constitutional violations, they are not cognizable [in a post-conviction proceeding] unless exceptional circumstances are shown which justify not raising the constitutional grounds on direct appeal." **Clark**, 859 S.W.2d at 789; accord **Amrine v. State**, 785 S.W.2d 531, 536 (Mo. 1990) (en banc); **Allen v. State**, 903 S.W.2d 246, 247 (Mo. Ct. App. 1995) (per curiam). Therefore, if a trial court's alleged violation of the constitution is not raised on direct appeal, the claim is defaulted absent exceptional circumstances justifying the failure to raise the errors on direct appeal, and then the matter may be pursued in a post-conviction proceeding.

The issues now presented in grounds two, ten, and eleven, are issues of alleged trial court error. While Petitioner presented the issue in ground two for plain error review on direct appeal, Petitioner did not present the issues in grounds ten and eleven on direct appeal.

When a matter is subject to consideration only on plain error review, a petitioner "may arguably have procedurally defaulted the claim." See **Shelton v. Purkett**, 563 F.3d 404, 408 (8th Cir. 2009). To the extent Petitioner presented ground two for plain error review the state appellate court initially stated it declined to review the claim for plain error; then found that Petitioner had failed to demonstrate either that Hendrickson's attendance could be procured in a reasonable time or that Hendrickson's testimony was material to his defense; further noted that even if Hendrickson had given Petitioner permission to stay at the house, that alleged permission was revoked when Victim

refused to let Petitioner in; and concluded that the trial court did not err, plainly or otherwise, in failing to grant the continuance or body attachment. (Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp'ts Ex. E, at 12.) Due to the state appellate court's discussion, this Court is unable to conclude that the state court did not review the issue, as suggested by Respondents. Assuming the state appellate court's review may be deemed plain error review, the United States Court of Appeals for the Eighth Circuit has noted there is a "split of authority in [the] circuit about whether [a state appellate court's] plain error review 'cures' [any] procedural default," see **Shelton**, 563 F.3d at 408, and about "the appropriateness of plain-error review in the habeas context," **Toua Hong Chang v. Minnesota**, 521 F.3d 828, 832 n.3 (8th Cir. 2008). In both of these cases, the Eighth Circuit applied the AEDPA's standard of review to consideration of the merits of the claims that had been considered by the state courts under plain error review. **Shelton**, 563 F.3d at 407-08 (not resolving the procedural default issues and concluding, based on the assumption the claims were subject to review, that "the AEDPA mandates a deferential review of a state court decision"); **Toua Hong Chang**, 521 F.3d at 831-33 (declining to apply plain-error analysis and instead applying analysis under Brecht v. Abrahamson, 507 U.S. 619 (1993), which "subsumes" the test under the AEDPA). Under the circumstances, the Court concludes that ground may not be considered procedurally barred; and will consider its merits under the standard of review set forth in § 2254. To the extent this ground for relief

should be deemed procedurally barred, then this Court's subsequent discussion of cause and prejudice applies to this ground for relief.

Because Petitioner did not present the alleged trial court errors presented in grounds ten and eleven on direct appeal, those grounds are procedurally defaulted unless they could have been and were presented in the post-conviction proceeding based on exceptional circumstances justifying the failure to pursue them on direct appeal. In his post-conviction proceeding, Petitioner presented only ineffective assistance of counsel claims, and did not pursue either of the two claims now presented as grounds ten and eleven. Therefore, grounds ten and eleven are procedurally defaulted.

In Missouri, a post-conviction motion proceeding is also the exclusive procedure for pursuing in state court any ineffective assistance of counsel claim; a motion court's decision on such motions are subject to appeal; and successive post-conviction motions are not permitted. Mo. S. Ct. Rule 29.15(a), 29.15(k), and 29.15(l); **Moore-El v. Luebbers**, 446 F.3d 890, 896 (8th Cir. 2006). Claims that should have been but were not presented in a post-conviction motion or on appeal from a denial of a post-conviction motion are procedurally defaulted and may not be considered in a federal habeas proceeding. See **Interiano v. Dormire**, 471 F.3d 854, 856 (8th Cir. 2006) (finding that claims not presented in an amended Rule 29.15 post-conviction motion or appeal from the denial of that motion are procedurally defaulted).

Petitioner presented his ineffective assistance of trial counsel claim now set forth in ground seven during his original post-conviction motion and post-conviction appeal

proceedings, but Respondents urge, the claim is procedurally defaulted because the state appellate court concluded it was not sufficiently pleaded. Specifically, the state appellate court concluded that Petitioner did not plead that Brennan was available and willing to testify, as required by **Rotellini**, 77 S.W.3d at 635; and, then assumed arguendo that Petitioner pleaded correctly and found that her testimony would not have provided a viable defense because the testimony showed Petitioner had permission to stay at the house only when Hendrickson and Victim were out of town and because any permission for Petitioner to stay at the house was revoked expressly and impliedly by Victim the night of the incident. (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), Resp'ts Ex. I, at 11.)

"The failure to satisfy state procedural requirements serves as an adequate and independent state procedural bar to review. Grubbs v. Delo, 948 F.2d 1459, 1462 (8th Cir. 1991)." **Smith**, 998 F.2d at 1441 (affirming a conclusion that claims were procedurally barred where the state court had concluded the petitioner's post-conviction motion failed specifically to allege facts entitling him to relief). Because this issue was initially addressed by the state appellate court as improperly pleaded and clearly denied on that basis, the Court considers this ground for relief procedurally defaulted.

Claims that have been procedurally defaulted may not give rise to federal habeas relief unless the petitioner can demonstrate cause and prejudice for the default, or that the federal habeas court's failure to consider the defaulted claims will result in a fundamental miscarriage of justice. **Wemark**, 322 F.3d at 1022-23 (citing Coleman v.

Thompson, 501 U.S. 722, 750 (1991), modified on other grounds by Martinez, 132 S. Ct. at 1315, 1316-19); accord **Sawyer v. Whitley**, 505 U.S. 333, 338-39 (1992). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [the petitioner]'s efforts to comply with the State's procedural rule." **Murray v. Carrier**, 477 U.S. 478, 488 (1986); accord **Maples v. Thomas**, 132 S. Ct. 912, 922 (2012) ("[c]ause for a procedural default exists where 'something *external* to the petitioner, something that cannot be fairly attributed to him[,] . . . 'impeded [his] efforts to comply with the State's procedural rule'" (alterations in original) (quoting Coleman, 501 U.S. at 753). There is no exhaustive catalog of the objective impediments "and the precise contours of the cause requirement have not been clearly defined." **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999). If no cause is established, it is unnecessary to consider whether Petitioner has demonstrated prejudice. **Abdullah v. Groose**, 75 F.3d 408 (8th Cir. 1996) (en banc).

Here, Petitioner has made no allegations attempting to show cause for the default of these grounds. No cause having been demonstrated, the Court will not consider whether or not there is prejudice.

The fundamental miscarriage of justice "exception requires a habeas petitioner to present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." **Abdi v. Hatch**, 450 F.3d 334, 338 (8th Cir. 2006). Petitioner must show not only new evidence, but "that 'it is more likely than not that no

reasonable juror would have convicted him in light of th[at] new evidence.'" **Osborne v. Purkett**, 411 F.3d 911, 920 (8th Cir. 2005) (quoting <u>Schlup</u>, 513 U.S. at 327); <u>accord</u> **House v. Bell**, 547 U.S. 518, 536-39 (2006) (<u>Schlup</u> standard applies to determine whether defaulted claims in a first federal habeas petition should be considered based on actual innocence).  Petitioner has not submitted new evidence to support the actual innocence exception allowing consideration of the merits of his defaulted claims. "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting <u>Schlup</u>, 513 U.S. at 316).

Concluding that the claims in grounds seven, ten, and eleven should be denied because they are procedurally defaulted, and Petitioner has not demonstrated either cause and prejudice or manifest injustice to support consideration of the merits of those claims, the Court will not further address those three grounds.

The Court will proceed to consider the merits of the remaining six claims, those set forth as grounds one, two, four, five, six, and eight of Petitioner's original habeas petition.  Three of these grounds do not present claims that Petitioner's counsel provided ineffective assistance, grounds one, two, and four; while three of the grounds do present such claims, grounds five, six, and eight.  The Court will first consider grounds one, two, and four, and then address the three remaining ineffective assistance of counsel claims.

<u>Merits - Standard of Review.</u>  Title 28 U.S.C. § 2254(d), as amended by the AEDPA, mandates that a federal court grant habeas relief on a claim that was adjudicated on its merits by the State courts *only*

> when the state court's decision [is] contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the [United States] Supreme Court, or the [state court] decision [is] based on an unreasonable determination of the facts in light of the evidence presented in the state court.

**de la Garza v. Fabian**, 574 F.3d 998, 1001 (8th Cir. 2009); <u>accord</u> **Christenson v. Ault**, 598 F.3d 990, 994 (8th Cir. 2010).

> A state court decision is contrary to clearly established federal law if it reaches a conclusion opposite to one reached by the [United States] Supreme Court on a question of law or decides the case differently than the [United States] Supreme Court has decided a case with a materially indistinguishable set of facts.

**de la Garza**, 574 F.3d at 1001; <u>accord</u> **Losh v. Fabian**, 592 F.3d 820, 823 (8th Cir. 2010) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000)).  "A state court decision involves an unreasonable application of clearly established federal law if, in the federal court's independent judgment, the relevant state court decision not only applied clearly established federal law incorrectly, but also did so unreasonably."  **de la Garza**, 574 F.3d at 1001.  "The unreasonable application inquiry is an objective one."  **Id.**; <u>see</u> **Losh**, 592 F.3d at 823 (under the unreasonable application clause of § 2254, a habeas petition may be granted "only if the state court applied the correct governing legal principle in an objectively unreasonabl[e] manner" (citing <u>Williams</u>, 529 U.S. at 409, 413)).

In reviewing state court proceedings to ascertain whether they are contrary to or involve an unreasonable application of clearly established federal law, this Court "is limited to the record that was before the state court that adjudicated the claim on the merits." **Cullen v. Pinholster**, 131 S. Ct. 1388, 1398 (2011). Additionally, this Court's review is limited to consideration of the United States Supreme Court precedents at the time the state court issues its decision on the merits. **Greene v. Fisher**, 132 S. Ct. 38, 44-45 (2011) (relying on Cullen, supra); accord **Losh**, 592 F.3d at 823 ("[o]nly rulings in [United States] Supreme Court decisions issued before the state court acts are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling [United States] Supreme Court holding on the point" (citations omitted)). The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" **Revels v. Sanders**, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)).

Additionally, Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" **Harrington v. Richter**, 131 S. Ct. 770, 785 (2011); accord **Brown v. Luebbers**, 371 F.3d 458, 462 (8th Cir. 2004) (en banc) ("[T]he 'summary nature' of the [state court's] discussion of [a] federal constitutional question does not preclude application of the AEDPA standard"). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the

absence of any indication or state-law procedural principles to the contrary."

**Harrington**, 131 S. Ct. at 784-85; accord **Johnson v. Williams**, 133 S. Ct. 1088, 1094 (2013) (Harrington presumption applies "when a state-court opinion addresses some but not all of a [petitioner]'s claims"). This presumption may "in some limited circumstances be rebutted." **Johnson**, 133 S. Ct. at 1096. When a state court issues a summary ruling, the petitioner can only satisfy the "unreasonable application" prong of § 2254(d) by showing there is "no reasonable basis" for the state court decision, which the habeas court assesses by determining "what arguments or theories could have supported the state court decision" and whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding" of a prior decision of the United States Supreme Court. **Cullen**, 131 S. Ct. at 1402 (quoting Harrington, 131 S. Ct. at 784, 786).

Furthermore, in a federal habeas action pursued by a state prisoner, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), and to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004). Moreover, this presumption of correctness applies to the factual determinations made by a state court at either the trial or appellate levels.

**Smulls**, 535 F.3d at 864-65. A state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." **Ryan v. Clarke**, 387 F.3d 785, 790 (8th Cir. 2004) (internal quotation marks omitted) (quoting Jones v. Luebbers, 359 F.3d 1005, 1011-12 (8th Cir. 2004)).

Finally, it is not within a federal habeas court's "province 'to reexamine state-court determinations on state-law questions.'" **Johnston v. Luebbers**, 288 F.3d 1048, 1056 (8th Cir. 2002) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)); see also **Taylor v. Bowersox**, 329 F.3d 963, 968 (8th Cir. 2003) ("A state's interpretation of its own law is virtually unreviewable by a federal court").

Sufficiency of the Evidence (Ground One). In ground one, Petitioner asserts that there was insufficient evidence to support the first-degree burglary conviction because there was no evidence that when Petitioner entered the home, he intended to commit a felony, here a first-degree assault. Respondents counter that the Missouri Court of Appeals correctly and reasonably applied **Jackson v. Virginia**, 443 U.S. 307 (1979).

Due Process and the Sixth Amendment "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." **United States v. Gaudin**, 515 U.S. 506, 510 (1995); **Johns v. Bowersox**, 203 F.3d 538, 543 (8th Cir. 2000) (quoting

Gaudin, 515 U.S. at 510). The relevant question in analyzing a habeas claim that the

evidence was insufficient to support a conviction is

> whether, after viewing the evidence in the light most favorable to the
> prosecution, *any* rational trier of fact could have found the essential
> elements of the crime beyond a reasonable doubt. This familiar standard
> gives full play to the responsibility of the trier of fact fairly to resolve
> conflicts in the testimony, to weigh the evidence, and to draw reasonable
> inferences from basic facts to ultimate facts.

**Jackson**, 443 U.S. at 319 (citation omitted). The scope of review of a state court's

determination of whether evidence was sufficient is "extremely limited." **Skillicorn v.**

**Luebbers**, 475 F.3d 965, 977 (8th Cir. 2007). Importantly, this limited review means

that when "a reviewing court [is] 'faced with a record of historical facts that supports

conflicting inferences [the reviewing court] must presume - even if it does not

affirmatively appear in the record - that the trier of fact resolved any such conflicts in

favor of the prosecution, and must defer to that resolution.'" **McDaniel v. Brown**, 558

U.S. 120, 133 (2010) (per curiam) (quoting Jackson, 443 U.S. at 326)); accord **Miller**

**v. Leapley**, 34 F.3d 582, 585 (8th Cir. 1994) (a federal habeas court "must presume that

the trier of fact resolved all conflicting inferences in the record in favor of the state, and

. . . must defer to that resolution" (citing Jackson, 443 U.S. at 326)). A federal habeas

court is not permitted to make its own determination of witness credibility, for that

determination is for the state court trier of fact. **Robinson v. LaFleur**, 225 F.3d 950,

954 (8th Cir. 2000). Petitioner is entitled to federal habeas relief on this ground only if

this Court "find[s] the [state appellate court's] conclusion that the evidence satisfied the

Jackson sufficiency of evidence standard [is] 'both incorrect *and* unreasonable.'" **Garrison v. Burt**, 637 F.3d 849, 855 (8th Cir. 2011) (quoting Cole v. Roper, 623 F.3d 1183, 1187 (8th Cir. 2010), cert. denied, 132 S. Ct. 147 (2011)).

As the state appellate court found on direct appeal, to sustain the first-degree burglary conviction under Mo. Rev. Stat. § 569.160, the State had to prove beyond a reasonable doubt that Petitioner unlawfully entered the house while Victim was present and entered or remained there with the purpose of committing a crime inside the building. See also **State v. Williamson**, 836 S.W.2d 490, 495 (Mo. Ct. App. 1992). During trial there was testimony by Victim, describing her hours-long experience with Petitioner the afternoon and night of the incident, and the breaking of glass right before Petitioner found her in a dark bedroom at the home; testimony that a window at the house was broken; testimony of a man who was on the telephone with Victim while Petitioner was inside the home talking with Victim before and at the beginning of the assault; testimony of a neighbor who saw a man outside Victim's home trying to get in the home and then saw, inside the home, a man (who was Petitioner) choking Victim while straddling her on the floor; and evidence of the time of calls to 911 and on the cell phone Victim used. Construing the evidence in the light most favorable to the prosecution and deferring to the jury's resolution of any conflicts in favor of the prosecution, there was sufficient evidence to support each element of the first-degree burglary offense, as the state appellate court aptly concluded on direct appeal.

Petitioner counters that there is insufficient evidence of his intent to assault upon entry into the house because, before Petitioner entered the home, Victim behaved in a manner indicating there was no one at home; after Petitioner entered the house, he was not violent or aggressive when he confronted Victim, but rather acted calmly, returning her telephone to her, and walking away from her and into the kitchen; and Petitioner allowed Victim to use a telephone. These arguments were appropriate for argument to the jury but are not convincing here. <u>See</u> **Nance v. Norris**, 392 F.3d 284, 290 (8th Cir. 2004) (the petitioner's "arguments to the contrary [of the sufficiency of the evidence finding], while appropriately made to a jury, are unconvincing here"). This Court must presume the jury resolved any conflicts and inconsistencies in the testimony and evidence introduced at trial in favor of the prosecution, and must defer to that resolution. **McDaniel**, 558 U.S. at 133; <u>accord</u> **Miller**, 34 F.3d at 585. Importantly, the jury is "not required to credit . . . testimony [supporting a petitioner's version of events] when other evidence support[s] the state's case." **Whitehead v. Dormire**, 340 F.3d 532, 537 (8th Cir. 2003).

While not expressly mentioning **Jackson**, the Missouri Court of Appeals clearly applied the **Jackson** standard in deciding that there was sufficient evidence to support Petitioner's first-degree burglary conviction. (Mem. Supplementing Order Affirming J. Pursuant to rule 30.25(b), Resp'ts Ex. E, at 8-10.) The record supports the state appellate court's determination. The state court decision is not contrary to or an

unreasonable application of **Jackson**; and constitutes a reasonable determination of the facts based on the evidence presented.

Ground one should be denied as without merit.

Denial of Continuance or Writ of Attachment to Secure Hendrickson's Testimony (Ground Two). For ground two, Petitioner contends he was denied his right to a fair trial and to compulsory process through the trial court's denial of Petitioner's requests for a continuance or a writ of attachment to secure the presence at trial of Hendrickson, whom Petitioner had subpoenaed. Respondents counter that the state appellate court reasonably concluded the claim lacked merit because Petitioner had not demonstrated that Hendrickson would appear if a continuance had been granted or that Hendrickson's testimony would have provided a defense to the first-degree burglary charge. As to the latter, the state court specifically determined that any permission to stay that Hendrickson may have given Petitioner was revoked when Victim refused to let Petitioner in. Respondents urge that determination is a reasonable one that is entitled to deference under § 2254, citing **State v. Davis**, 954 P.2d 325 (Wash. App. 1998).[6]

"[A] trial court enjoys broad discretion in ruling on matters of continuances." **White v. Lockhart**, 857 F.2d 1218, 1220 (8th Cir. 1988) (citing to Morris v. Slappy, 461 U.S. 1, 11 (1983)). A due process violation may arise "only [when there is] an

_____

[6] In **Davis**, the Washington Court of Appeals concluded a first-degree burglary defendant's license to enter an apartment was revoked once the person in the apartment told the defendant to leave. **Id.** at 328 (discussing a defendant unlawfully remaining in premises as supporting first-degree burglary).

unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay.'" **Slappy**, 461 U.S. at 11-12 (quoting <u>Ungar v. Sarafite</u>, 376 U.S. 575, 589 (1964)).  To prevail, the petitioner "must show that in denying [the petitioner's] request for a continuance the [trial] court acted in a manner 'so egregious that it was fundamentally unfair.'  <u>See</u> <u>Wade v. Armontrout</u>, 798 F.2d 304, 307 (8th Cir. 1986)." **White**, 857 F.2d at 1220.  The Court must consider the circumstances surrounding the request, in particular the reasons presented to the trial judge at the time the request is denied.  **Ungar**, 376 U.S. at 589.

Here, the issue arose as the defense concluded presentation of four witnesses, whose testimony indicated Petitioner may have had permission to stay at the house near the time of the incident.  In addressing the matter on direct appeal, the Missouri Court of Appeals concluded that Petitioner failed to demonstrate that Hendrickson's presence or testimony would be procured within a reasonable time or that law enforcement personnel would find him in a timely manner; and that the record showed no one knew where Hendrickson was and several family members had tried unsuccessfully to reach him.  Additionally, the state appellate court determined that Hendrickson's testimony would not provide a defense to the burglary charge, because, even if Hendrickson had given permission to Petitioner to stay at the house, any alleged permission was revoked when Victim refused to let Petitioner in.

Nothing in the record discloses either "an unreasoning and arbitrary 'insistence [by the trial court] upon expeditiousness in the face of a justifiable request for delay,'"

**Slappy**, 461 U.S. at 11-12 (quoting <u>Ungar</u>, 376 U.S. at 589), or trial court conduct that was "'so egregious that it was fundamentally unfair,'" **White**, 857 F.2d at 1220 (quoting <u>Wade</u>, 798 F.2d at 307). The Missouri Court of Appeals reasonably upheld the trial court's denial of a continuance or writ to obtain the presence of Hendrickson. <u>Accord</u> **Loggins v. Frey**, 786 F.2d 364, 367 (8th Cir. 1986) (finding no due process violation in the denial of a continuance to obtain a witness' testimony). The record supports the state court's decision. That decision is not contrary to or an unreasonable application of clearly established federal law; and constitutes a reasonable determination of the facts based on the evidence presented.

Ground two should be denied.

<u>Denial of Continuance of Sentencing to Challenge 1998 Georgia Conviction (Ground Four).</u> In ground four, Petitioner contends he was denied his right to a fundamentally fair trial when the trial court overruled Petitioner's motion for continuance to show that the Georgia conviction was void. Respondents counter that the state appellate court reasonably concluded the claim lacked merit because the facts did not warrant a continuance in that approximately eight years passed between the Georgia conviction and Petitioner's Missouri trial proceeding, as well as two months between the Missouri trial and the Missouri sentencing, and Petitioner had not challenged the Georgia conviction during that period of time. The state appellate court also concluded that it was not clear that Petitioner's conviction was void under **Powell**, <u>supra</u>, based on the circumstances.

As noted in the discussion of ground two, "a trial court enjoys broad discretion in ruling on matters of continuances." **White**, 857 F.2d at 1220 (citing to <u>Slappy</u>, 461 U.S. at 11). A due process violation may arise "only [when there is] an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay.'" **Slappy**, 461 U.S. at 11-12 (quoting <u>Ungar</u>, 376 U.S. at 589). To prevail, the petitioner "must show that in denying [the petitioner's] request for a continuance the [trial] court acted in a manner 'so egregious that it was fundamentally unfair.' <u>See</u> <u>Wade . . .</u>, 798 F.2d [at] 307 . . . ." **White**, 857 F.2d at 1220. The Court must consider the circumstances surrounding the request, in particular the reasons presented to the trial judge at the time the request is denied. **Ungar**, 376 U.S. at 589.

Here, the issue arose at the time of sentencing when Petitioner presented a desire to challenge an eight-year-old conviction from another state that had not been previously challenged, with the proposed challenge based on an eight-year-old Georgia supreme court decision. Nothing in the record discloses either "an unreasoning and arbitrary 'insistence [by the trial court] upon expeditiousness in the face of a justifiable request for delay,'" **Slappy**, 461 U.S. at 11-12 (quoting <u>Ungar</u>, 376 U.S. at 589), or trial court conduct that was "'so egregious that it was fundamentally unfair,'" **White**, 857 F.2d at 1220 (quoting <u>Wade</u>, 798 F.2d at 307). The Missouri Court of Appeals reasonably upheld the trial court's denial of a continuance of the sentencing. The record supports the state court's decision. That decision is not contrary to or an unreasonable application

of clearly established federal law; and constitutes a reasonable determination of the facts based on the evidence presented.

Ground four should be denied.

The remaining three grounds for relief are ineffective assistance of counsel claims. Two are based on the alleged ineffective assistance of trial counsel (grounds five and six), and the third is based on the allegedly ineffective assistance of the attorney on direct appeal (ground eight).

Standard of Review - Ineffective Assistance of Counsel Claims. An accused's Sixth Amendment right to the assistance of counsel is a right to the effective assistance of counsel. **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir. 2007) (citing Kimmelman v. Morrison, 477 U.S. 365, 377 (1986)). The Supreme Court has established a two-part test for determining whether or not an attorney provided effective assistance of counsel. See **Strickland v. Washington**, 466 U.S. 668 (1984). A petitioner must establish both deficient performance, i.e., that "counsel's representation fell below an objective standard of reasonableness," and prejudice, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Id.**, 466 U.S. at 687-88, 694; accord **Marcrum**, 509 F.3d at 502; **Kellogg v. Skon**, 176 F.3d 447, 452 (8th Cir. 1999).

To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**, 181 F.3d

970, 972 (8th Cir. 1999) (quoting Strickland, 466 U.S. at 687). More specifically, a petitioner must demonstrate that "counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney." **Armstrong v. Kemna**, 534 F.3d 857, 863 (8th Cir. 2008) (citing Strickland, 466 U.S. at 687-89). "Only reasonable competence, the sort expected of the 'ordinary fallible lawyer,' is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (quoting Nolan v. Armontrout, 973 F.2d 615, 618 (8th Cir. 1992)). The Court is highly deferential in analyzing counsel's conduct and "indulg[es] a strong presumption that counsel's conduct falls within the wide range of professional judgment.'" **Armstrong**, 534 F.3d at 863 (quoting Middleton v. Roper, 455 F.3d 838, 846 (8th Cir. 2006)).

To establish prejudice, a petitioner must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Armstrong v. Kemna**, 590 F.3d 592, 595-96 (8th Cir. 2010) (quoting McCauley-Bey v. Delo, 97 F.3d 1104, 1105 (8th Cir. 1996)). "'A reasonable probability is [a probability] sufficient to undermine confidence in the outcome.'" **Id.** at 596 (quoting McCauley-Bey, 97 F.3d at 1105); accord **Carroll v. Schriro**, 243 F.3d 1097, 1100 (8th Cir. 2001) (quoting Strickland, 466 U.S. at 694). The petitioner bears the burden of showing such a reasonable probability. **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992).

The question of prejudice from counsel's performance need not be reached if the performance was not deficient.  See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998).  Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice.  See **Strickland**, 466 U.S. at 697; **Williams v. Locke**, 403 F.3d 1022, 1025 (8th Cir. 2005).

Ineffective Assistance of Trial Counsel - Failure to Object to Long Sentence (Ground Five).  In ground five, Petitioner contends that his rights to due process, the effective assistance of counsel, and fair and reliable sentencing under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated when his trial attorney failed to object to the trial court's post-trial imposition of a long sentence after the State had offered, prior to trial, a twenty-five year sentence, because the longer sentence resulted from his insistence on going to trial.  Specifically, Petitioner contends it "seems clear" that he was punished by the trial court for pursuing a trial, because the sentence imposed was greater than sentence recommended by the State prior to trial.  Respondents counter that the Missouri appellate court's rejection of this challenge was reasonable and is entitled to deference under § 2254(d) because there is support in the record for the decision, and Petitioner did not demonstrate a reasonable probability that the outcome of the sentencing would have been different if the objection had been made.

The Missouri Court of Appeals denied this point upon concluding any objection by trial counsel would have lacked merit because the trial court did not comment on Petitioner's constitutional right to a trial or his rejection of the State's plea offer when

sentencing Petitioner. Rather, the state appellate court observed, the trial court articulated consideration of Petitioner's character, criminal history, and attitude toward the offenses when imposing sentences within the applicable statutory ranges. With respect to Petitioner's contention that it should be presumed the trial court was punishing him for pursuing a trial, the Missouri appellate court characterized that contention as "mere speculation at best, and in view of the trial court's comments [at the time of sentencing], speculation devoid of any substance." (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), Resp'ts Ex. I, at 7.)

"A sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as the right to jury trial." **Waring v. Delo**, 7 F.3d 753, 758 (8th Cir. 1993). When, as here, the sentencing does not occur after an appeal, a petitioner pursuing a habeas claim based on this issue has the burden of proving actual judicial vindictiveness motivated the sentence imposed after trial. **Id.** Notably, presuming imposition of a longer sentence after trial was motivated by unconstitutional vindictiveness is "not reasonable" because a judge "has considerably more relevant sentencing information after trial" in that "'the judge may gather a fuller appreciation of the nature and extent of the crimes charged' and gain 'insights into [the defendant's] moral character and suitability for rehabilitation." **Id.** (quoting Alabama v. Smith, 490 U.S. 794, 801 (1989)) (alteration in original).

A review of the trial court's transcript and legal file persuades this Court that the trial court considered only factors relevant to the imposition of sentence. This record

reveals no actual evidence, and no support for presuming, that the trial court acted unconstitutionally in imposing sentence on Petitioner. Because there was no constitutional basis for an objection to the sentence imposed by the trial court on the grounds of vindictiveness, the failure of Petitioner's trial counsel to object to the sentence on that basis was not deficient performance and "it was objectively reasonable not to make the meritless objection." **Carter v. Hopkins**, 92 F.3d 666, 671 (8th Cir. 1996) (addressing an attorney's failure to object to in-court identifications).

The state appellate court's determination that an objection would have lacked merit because the trial court referred only to relevant factors in imposing sentence, and therefore there trial counsel did not provide ineffective assistance in failing to object to Petitioner's sentence, was not contrary to or an unreasonable application of clearly established federal law and was not based on an unreasonable determination of the facts.

Ground five should be denied.

Ineffective Assistance of Trial Counsel - Failure to Present Hendrickson As a Witness at Trial (Ground Six). In ground six, Petitioner contends his Fifth, Sixth, and Fourteenth Amendment rights to due process and the effective assistance of counsel were violated by his trial attorney's failure to present the testimony of Hendrickson during trial. Respondents argue that habeas relief is not warranted on this basis because the state appellate court found this issue lacked merit in that counsel took reasonable steps to call Hendrickson, and there was no prejudice because Hendrickson's reported testimony was not exculpatory. In his reply, Petitioner urges that counsel did not do "all

that could be expected [of an attorney] to secure" Hendrickson's testimony. Specifically, Petitioner contends his trial attorney should have put Hendrickson on the stand first or taken his deposition, and should have made a timely request for a continuance.

In rejecting this point on appeal, the state appellate court noted that trial counsel had subpoenaed Hendrickson to appear and testify, and had made unsuccessful efforts to contact Hendrickson when he failed to appear. That court further noted that on direct appeal the state court had decided that Hendrickson would not provide a defense to the burglary charge because, even if Hendrickson had given Petitioner permission to enter the home, that permission was revoked when Victim refused to let Petitioner in the house.

This is not a situation where an attorney failed to make any attempt to call a witness; rather, Petitioner's trial counsel subpoenaed Hendrickson to appear, Hendrickson failed to appear, and counsel's efforts to contact or locate Hendrickson after he failed to appear were not successful. It is not clear that counsel's duty on behalf of Petitioner extended beyond the reasonable efforts counsel made, particularly because it is not clear that Hendrickson's testimony provided a viable defense.

The state appellate court's determination, that Petitioner's trial counsel was not ineffective for failing to secure Hendrickson's testimony where the attorney had made reasonable efforts to ensure Hendrickson's appearance and where Hendrickson's testimony would not have provided a viable defense, was not contrary to or an

unreasonable application of, clearly established federal law; and was not based on an unreasonable determination of the facts.

Ground six should be denied.

Appellate Attorney's Ineffective Assistance - Failure to Seek Rehearing or Transfer (Ground Eight).  For his eighth ground, Petitioner argues that his Fifth, Sixth, and Fourteenth Amendment rights to due process and the effective assistance of counsel were violated when his attorney on direct appeal failed to seek rehearing, transfer, or other correction of the state appellate court's determination that Petitioner's Georgia conviction included a conviction for rape and therefore his sodomy conviction was not void under **Powell**, supra, because the sodomy offense involved force.  Respondents counter that there is no federal constitutional right to counsel during the discretionary motion stage, and therefore Petitioner is not entitled to an attorney for a post-appeal motion for rehearing and application to transfer regarding that appeal, citing **Wainwright**, 455 U.S. 586 (concluding the defendant's private attorney's failure timely to file an application for writ of certiorari to the state supreme court did not constitute ineffective assistance of counsel because, under Ross v. Moffitt, 417 U.S. 600 (1974), the defendant had no constitutional right to counsel to pursue a discretionary state appeal).  Respondents also argue that a contrary determination by this Court would violate **Teague v. Lane**, 489 U.S. 288 (1989).

The Missouri Court of Appeals upheld the motion court's conclusion that Petitioner's appellate attorney did not provide ineffective assistance in failing to seek

rehearing or other relief after issuance of the opinion in Petitioner's direct appeal. The state appellate court expressly found that "[m]otions for rehearing and motions for transfer are not matters of right; they are forms of discretionary review," there is no constitutional right to counsel to pursue such review, and therefore Petitioner's counsel on direct appeal cannot be ineffective for failing to seek such review, citing **Wainwright**, supra.

In **Ross**, supra, the United States Supreme Court held that, where a defendant has one appeal as of right, the due process clause does not require a state to provide a defendant with counsel on a discretionary appeal to the state supreme court. **Ross**, 417 U.S. at 602-16; accord **Riley v. Lockhart**, 726 F.2d 421, 423 (8th Cir. 1984) (per curiam) ("a defendant has a constitutional right to counsel on his first appeal . . . , but no such right attaches on subsequent discretionary appeals" (citations omitted)).

As the state appellate court found, a litigant in Missouri is not required to, but may, seek rehearing or transfer to the Missouri Supreme Court after the state appellate court issues its decision. We defer to the Missouri state court's interpretation of Missouri state law. Because there is no constitutional right to counsel to pursue discretionary review after an appeal of right, Petitioner does not have an ineffective assistance of counsel claim for his appellate attorney's failure to file a motion for rehearing or transfer or other post-appeal relief. See **Wainwright**, 455 U.S. at 587-88 ("Since [the defendant] had no constitutional right to counsel, he could not be deprived

of the effective assistance of counsel" for his attorney's failure timely to file an application for discretionary review after completion of the first appeal).

The state appellate court's determination, that Petitioner's appellate attorney did not provide ineffective assistance by failing to file a post-opinion motion for rehearing, transfer, or other relief, was not contrary to or an unreasonable application of, clearly established federal law; and was not based on an unreasonable determination of the facts.

Ground eight should be denied.

## Conclusion

Based on the foregoing, the undersigned concludes that Petitioner's amended habeas petition was untimely filed and contains at least one claim (the second claim which is referred to as ground thirteen) that does not relate back to the timely filed original habeas petition; that grounds three and nine in the original petition are not cognizable in this federal habeas proceeding; that grounds seven, ten, and eleven in the original petition are procedurally defaulted, and Petitioner has not established cause and prejudice or actual innocence to avoid the default; and that the remaining six grounds lack merit. Therefore, the undersigned will recommend the dismissal of the amended petition as untimely filed and the denial of the original petition. Due to the recommended dismissal of the amended petition, the undersigned will deny as moot any pending request pertaining to that amended petition.

Accordingly, after careful consideration,

**IT IS RECOMMENDED** that the amended petition for habeas corpus relief under 28 U.S.C. § 2254 filed by Dale W. McKenzie be **DISMISSED** as untimely filed.

**IT IS FURTHER ORDERED** that any pending requests related to the amended petition are **DENIED** as moot.

**IT IS FURTHER RECOMMENDED** that the original petition for habeas corpus relief under 28 U.S.C. § 2254 filed by Dale W. McKenzie be **DENIED** without further proceedings.

The parties are advised that they have **fourteen days** to file written objections to the Recommendation and the Memorandum incorporated herein pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in waiver of the right to appeal questions of fact.

       /s/ Thomas C. Mummert, III
       THOMAS C. MUMMERT, III
       UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of August, 2013.